**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**AMSTER & CO., formerly known as Lafer, Amster & Co., Arnold Marvin Amster, Barry Stuart Lafer, and Joel Richard Packer, Defendants.**

**No. 88 Civ. 8587 (CSH).**

United States District Court, S.D. New York.

May 25, 1989.

Lawrence Iason, Regional Administrator, S.E.C., New York City (Carmen J. Lawrence, Jeffrey R. Zuckerman, Christopher S. Petito, James J. Tyne and Alan Rubinstein, Law Clerk, of counsel), for plaintiff.

Shea & Gould, New York City (Frank C. Razzano, of counsel), for defendant Amster & Co. and Arnold M. Amster.

Hellring Lindeman Goldstein Siegel Stern & Greenberg, Newark, N.J. (Jona-

---

than L. Goldstein, of counsel), for defendant Barry S. Lafer.

Buchwald & Kaufman, New York City (Don D. Buchwald, of counsel), for defendant Joel R. Packer.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this civil enforcement action, the Securities and Exchange Commission ("SEC") charges defendants with making false and misleading filings concerning the purpose of defendants' investments in the stock of Graphic Scanning Corp. The main thrust of the charge is that defendants formulated the intention to wage a proxy contest for control of Graphic at least as early as February 3, 1986, but did not reveal their true intentions until March 3, 1986. Defendants deny the charges.

During the investigatory stage of this action, SEC staff members conducted, and defendants and their counsel submitted in the circumstances related below, to depositions and production of documents. Defendants now ask this Court for a protective order under Rule 26(c), F.R.Civ.P., which if granted would prohibit the SEC from disclosing or providing "the contents of any depositions and any documents produced during discovery of this matter to counsel for Azurite Corp. Ltd. or to any other third parties and their counsel ..." The reference in the requested order to Azurite Corp. Ltd. arises from the fact that this company has brought a securities class action against defendants which defendants say "is based upon the same facts as the complaint in this action." Defendants' Brief at 6 n. 3. The Azurite action, 89 Civ. 746 (PKL), is currently pending before Judge Leisure. The SEC opposes the protective order defendants request. So, not surprisingly, do counsel for Azurite, in a letter brief which I deem it appropriate to consider, given Azurite's status as the only specific prohibited recipient of the SEC discovery materials.

The SEC and defendants helpfully agreed to a temporary restraining order, prohibiting disclosure by the SEC of this material to Azurite or to others pending this Court's resolution of the motion.

The case for defendants is that during the investigatory stage of the SEC proceeding, defendants through their counsel offered to the SEC a limited waiver of their attorney-client privilege, which SEC representatives accepted and defendants thereafter relied upon. Defendants perceive the SEC as having reneged upon its agreement; and urge that the entry of a protective order furnishes the only practical means of holding the agency to its bargain.

The SEC, while arguing that defendants by their conduct fully waived their attorney-client privilege, say preliminarily that I need not reach the issue of waiver, since it "is irrelevant to the question of whether defendants are entitled to a confidentiality order respecting the matters waived ..." Zuckerman affidavit at ¶ 6. The SEC also seeks to distinguish the waiver cases upon which defendants rely, arguing:

They all involved disclosure made to the SEC during private investigations. None involved disclosure of privileged communications during public judicial proceedings. The rationale of the cases relied upon by defendants was that a limited waiver should be recognized to promote disclosure of information to administrative agencies during investigations. Clearly, that rationale does not apply to evidence that is proffered in adversarial judicial proceedings such as these.

SEC Brief at 11 n. 8.

Dealing with the last contention first, the SEC's attempted distinction, said to be decisive in the case at bar, between its private and public proceedings is rather strained, given the fact that all the SEC subpoenas which generated the material at issue advised the recipients that the subpoenas issued in aid of "a formal order of *private investigation* issued by the Commission ..." (emphasis added). To be sure, and undoubtedly to defendants' disappointment, the private investigation became public when the SEC filed its complaint against defendants. One would suppose that the governing context was that in effect at the

time disclosure was made; here that context was private, not public, and there is an element of the bootstrap to the SEC's contention that the playingfield changed when the SEC decided unilaterally to transform a "private" investigation to a "public" civil action. At least, I cannot accept that the labels themselves are so decisive as to strip defendants entirely of reliance upon a case such as *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1978) (*en banc*) ("As Diversified disclosed these documents in a separate and nonpublic SEC investigation, we conclude that only a limited waiver of the privilege occurred.")

Nor do I agree with the SEC's apparent position that the issue of waiver is entirely irrelevant to that of whether a protective order should issue under Rule 26(c). The SEC correctly argues that the burden falls on defendants to show "good cause" for such an order, but would deny the relevance of the single factor which, if established, would carry that burden: an agreement between defendants and the SEC, cast in the terms of limited waiver of the attorney-client privilege, which would as a practical matter require for its implementation the protective order defendants now seek.

Having said all this, I conclude that defendants have not demonstrated the existence of that underlying agreement, and that their motion fails in consequence.

The SEC sent to each subpoena *duces tecum* recipient a printed sheet of "Supplemental Information." That sheet, after setting forth the rights of those favored with subpoenas and the consequences of their failure to obey, goes on to discuss "routine uses of information." The information sheet undertakes to set forth "a list of the routine uses which may be made of the information furnished." Those uses include, at ¶ 4:

> In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

And at ¶ 13:

> To any persons during the course of any inquiry or investigation conducted by the Commission's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry

Without pausing to painstakingly to parse this language, it is fair to say that the defendants were on notice that disclosure might be made of the statements they gave and the documents they produced, notwithstanding the "private" nature of the investigation at that stage.

It is in this context that counsel for one of the defendants (with whom all are allied on the issue) wrote to the Associate Regional Administrator of the SEC in New York City under date of July 8, 1987:

> Dear Ms. Flannery:
>
> As we agreed at our conference yesterday, Lafer Amster, both in its prior submissions and response to your subpoena and its submissions to the subpoenas which we discussed today, has decided not to assert any attorney-client privileges as against the Commission, although some of the documents which we have furnished and will furnish would fall with its ambit.
>
> As we initially advised Mr. Paley, the fact that we have made this limited disclosure to the Securities & Exchange Commission is in no sense a waiver by Lafer Amster as to its attorney-client privilege in respect to any third party.

An SEC staff attorney, Richard Paley, responded to defense counsel under date of July 16, 1987:

> Dear Judge Stern:
>
> This is to acknowledge receipt of your letter of July 8, 1987 to Associate Regional Administrator Anne C. Flannery, Esq. In the letter, you asserted that the disclosures to the Commission on behalf of your client Lafer Amster do not waive your client's attorney-client privilege in respect to any third party.

As we discussed, while the staff acknowledges your position, you should not assume or deem that we acquiesce or agree with any position, condition or reservation of rights which purports to be a limitation on the Commission's receipt, use, disposition or transfer of documents. Any such determination will be made at the appropriate time.

If you have any questions, please do not hesitate to contact the undersigned at (212) 264–1643.

Given that exchange of correspondence, defendants could not reasonably have considered that the SEC had agreed forever and a day to withhold from members of the public the testimony elicited and documents produced during the ensuing investigation. *Cf. In re Agent Orange Product Liability Litigation,* 821 F.2d 139, 144 (2d Cir.1987).

It is true that during certain depositions, defense counsel undertook to interpose a limited waiver of the attorney-client privilege, and counsel for the SEC signified assent. A colloquy, typical of that upon which defendants rely, appears in the margin.[1] But I agree with the SEC, viewing such exchanges in the totality of circumstances, that they constitute no more than staff agreement "that an answer to one question would not estop the witness from asserting a claim of privilege with respect to another." Zuckerman affidavit at ¶ 16. That pragmatic, question-by-question approach to a deposition falls far short of providing a base for the broad protective order which defendants now seek.

While I am aware of no case squarely in point, and the parties cite none, the thrust of recent Second Circuit authority militates against this protective order. *See In re Agent Orange Product Liability Litigation, supra* (Rule 26(c) and Rule 5(d) gives civil litigants "a statutory right of access to … discovery material", so that "if good cause is not shown, the discovery materials … should not receive judicial protection and therefore would be opened to the public for inspection."); *In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982) ("The privilege itself is an exception to the critically important duty of citizens to disclose relevant evidence in legal proceedings. It does not shield communications which serve purposes other than those which led to judicial recognition of the privilege…. Once a corporate decision is made to disclose them for commercial purposes, no matter what the economic imperatives, the privilege is lost, not because of voluntariness or involuntariness, but because the need for confidentiality served by the privilege is inconsistent with such disclosure.").

I deny defendant's motion to bind the SEC to a protective order which the agency regards as inimical to its public purpose because I conclude that defendants have not demonstrated a sufficient basis for that relief (which is unprecedented, insofar as I can tell).

Defendants' counsel proffered a claim of third-party confidentiality in his correspondence, but the SEC did not agree in responding to it, and cannot reasonably be regarded as having done so later. Defendants, for strategic reasons they were of course entitled to follow, did not insist upon a third-party confidentiality agreement acknowledged by the SEC as a condition of cooperation with the agency's investigation. None can be fashioned after the fact.

It is perhaps useful to stress that defendants' entitlement to this protective order is the only issue before me, and the only issue I resolve. Civil litigation in which private third parties assert claims against these defendants is pending before Judge Leisure of this Court, and (I learn from

---

1. MR. ZUCKERMAN: Back on the record.
   While off the record, there was a conversation between myself and Mr. Stern and Mr. Goldstein concerning the question of privilege as it might be asserted here.
   Mr. Stern has indicated that the witness desires to answer this particular question, but at the same time not waive any privilege as to subject matter or in any other respect. And the staff has agreed for this limited purpose to go along with that.
   MR. STERN: Fine.
   It is our understanding that in answering this question, it will not be deemed to be a waiver of privilege with respect to any other inquiry you may make.
   MR. ZUCKERMAN: Correct.

defendants' reply brief at 4) before a judicial colleague in the District of Delaware. In relation to this Court, these are Article III judges of equal rank and at least equal ability. Most of the cases defendants cite involve litigation between private parties in which prior statements to the SEC are said to waive, or not to waive, the attorney-client or work product privilege within the context of such private litigation.[2] Whether that line of authority, or any other, inhibits the third-party plaintiffs or their proof in the pre-trial or trial phases of their actions against defendants is for the trial judges to say, and concerning which I intimate no view.[3]

Defendants' motion for a protective order is denied.

Notwithstanding this conclusion, I continue the restraining order for ten (10) days from the date of this Order, so that defendants may apply to the court of appeals if so advised. Any further stay must come from that court.

It is SO ORDERED.

---

**2.** *Diversified Industries, supra,* falls within that category, as do two decisions in this district upon which defendants place particular reliance: *Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co., Inc.,* 521 F.Supp. 638 (S.D.N.Y.1981) (Conner, J.), and *Schnell v. Schnall,* 550 F.Supp. 650 (S.D.N.Y.1982) (Goettel, J).

**3.** This Court's refusal to bar the SEC from *showing* this material to third-party litigants may not foreclose defendants from arguing to the trial judges that a limited waiver of privilege bars those third parties from *using* such material at trial. But that is for the trial judges to say, if asked to do so.