**In re M & L BUSINESS MACHINE COMPANY, INC., Debtor.**

**Christine J. JOBIN, Plaintiff,**

v.

**BANK OF BOULDER, et al., Defendants.**

**Richard J. DEMMITT, Plaintiff,**

v.

**BANK OF BOULDER and Christine J. Jobin, Defendants.**

Civ. A. Nos. 91–K–1065, 91–K–2204.
Bankruptcy No. 90–15491 CEM.

United States District Court,
D. Colorado.

Nov. 3, 1993.

---

Joseph C. French, Boulder, CO, for Bank of Boulder.

Christine J. Jobin, pro se.

Martin A. Bloom, Bloom Murr & Accomazzo, Denver, CO, for Demmitt.

ORDER REGARDING MOTION TO FILE DOCUMENTS UNDER SEAL AND MOTION FOR PROTECTIVE ORDER

KANE, Senior District Judge.

This matter is before me on the Bank of Boulder's motion to permit the filing of ex-

hibits under seal and motion for protective order. The Bank is a defendant in two adversary proceedings, one brought by Christine J. Jobin, trustee for the estate of M & L Business Machines, Inc. ("Trustee") and the other by Richard J. Demmitt, an investor in M & L. In its motion for protective order, the Bank argues that two letters written by counsel for the Bank and three memoranda written by former employees of the Bank addressed to counsel are protected by the attorney-client and work product privileges. The Bank requests leave to file these and related documents under seal. For the reasons stated below, I grant the motions.

## I. *Background.*

M & L Business Machines Company, Inc. filed its Chapter 7 bankruptcy petition on October 1, 1990. M & L converted its case to a Chapter 11 reorganization and, on December 18, 1990, the Trustee was appointed. On September 26, 1991, she reconverted the case to a Chapter 7 liquidation after learning that much of M & L's inventory consisted of boxes of bricks and dirt. Since that time, the Trustee has commenced over 500 adversary proceedings seeking to recover assets for the benefit of the estate.

In early 1991, M & L and its principals and affiliates became the target of a criminal investigation. During the months preceding M & L's bankruptcy, the Bank handled several of M & L's accounts. By letter agreement dated May 6, 1991 (the "Letter Agreement"), the Bank agreed to provide the U.S. Attorney with certain information in its records relevant to the government's investigation. The Bank's cooperation was expressly made subject to the requirement that any information provided under the Letter Agreement be treated as privileged, subject to protection under Fed.R.Crim.P. 16(a)(2) and not be disseminated except as required under federal law or the rules of criminal procedure. After being presented this and other information, a grand jury issued criminal indictments against a number of M & L principals, agents and affiliates in Criminal Case No. 92–CR–075 (the "Criminal Case").

On October 28, 1992, the Trustee moved to examine and copy all records presented to the grand jury in the Criminal Case in connection with another adversary proceeding, Civil Action No. 92–K–1467, brought against the Resolution Trust Corporation (RTC). On November 23, 1992, a magistrate judge denied the motion and directed the Trustee to subpoena the U.S. Attorney for the production of the grand jury files. She did so on November 25, 1992. The U.S. Attorney moved to quash the subpoena. The magistrate judge denied the motion to quash on December 18, 1992. Due to confusion over the scope of the magistrate's order, the Trustee agreed to seek only those documents which the RTC had provided to the grand jury. Shortly thereafter, the Trustee then moved in the Criminal Case for access to all of the grand jury files. On January 29, 1993, the court in the Criminal Case granted the Trustee's motion. The Bank did not receive notice or otherwise participate in the proceedings concerning the Trustee's access to the grand jury files.

On March 12, 1991, the Trustee commenced the instant adversary proceeding against the Bank seeking to recover preferential transfers. She later amended her complaint to add claims for fraudulent transfers, post-petition transfers and equitable subordination. On February and March 1993, the Trustee served written discovery on the Bank which included questions about two letters ("the Letters") and three memoranda (the "Memoranda") which the Bank now claims are privileged. The Letters were written by counsel for the Bank to the Bank's vice-president for human resources and concerned the Bank's response to a claim for unemployment insurance benefits by a former bank officer who had supervised the M & L account. The Memoranda were drafted, at the request of counsel for the Bank, by two former officers and one former employee and describe these individuals' dealings with M & L.

The Trustee obtained the Letters and Memoranda in February 1993 when, having been granted permission by the court in the Criminal Case, she reviewed all of the grand jury files. These documents were contained in several boxes labeled "Personnel Files," which also included other background information on the three employees who had writ-

ten the Memoranda. On July 29, 1993, the Bank filed the instant motion for protective order, asserting that the Letters and Memoranda are protected from discovery by the attorney-client privilege and work product immunity.

## II. Motion to File Documents Under Seal.

The Bank first requests my permission to file under seal certain exhibits connected with its motion under seal in order to protect their privileged nature and to avoid compromising the ongoing investigation in the Criminal Case. These exhibits include the Letter Agreement, the Letters, the Memoranda and one additional letter (for which the Bank makes no claim of privilege) sent to the Colorado Department of Labor and Employment. The Bank argues that the Trustee will not be prejudiced by this request because she has already gained access to the Letters and Memoranda. The Bank acknowledges that the Trustee has not obtained the Letter Agreement and therefore suggests I permit her to view it subject to the limitation that its contents not be disclosed to any other party.

The Trustee does not specifically oppose this motion, but states in her response that she believes the Bank provided the Letters and the Memoranda under a grand jury subpoena and not under the Letter Agreement. Because the U.S. Attorney has been unwilling to confirm her suspicions, the Trustee represents that she will file, on September 2, 1993, a motion in the Criminal Case for authority to review any subpoenas directed to the bank as well as the Letter Agreement. (Curiously, on September 17, 1993, the Trustee did file such a motion in the Criminal Case, seeking to examine the subpoenas, if any, but not the Letter Agreement. That motion is pending.) She further adds that her response to the Bank's motion for protective order is preliminary at this point because she has been unable to review these documents.

I grant the Bank's motion for leave to file documents under seal to the extent that I will review them in camera. Since, with the exception of the Letter Agreement, the Trustee already has access to these documents, I question the need to make them

part of the court's record by filing them under seal. Whether the Trustee should be permitted to view the Letter Agreement is a matter that must be determined by the court in the Criminal Case, since it is part of the record there. I note, however, that on its face, the Letter Agreement supports the Bank's contention that it provided information to the U.S. Attorney to effectuate a criminal referral and not because it was compelled by a grand jury subpoena. The Trustee has yet to provide any evidence to the contrary. Therefore, I assume for the purposes of the Bank's motion for protective order that the Letters and Memoranda were provided under the Letter Agreement and not by subpoena. If the Trustee obtains permission in the Criminal Case to review the Letter Agreement and the subpoenas, if any, and, based on that review, believes this assumption to be incorrect, she may move for modification of this order to the extent my reasoning herein is affected by that assumption.

## III. Motion for Protective Order.

### A. Attorney–Client Privilege.

In its motion for protective order, the Bank first argues that the Letters and Memoranda are privileged attorney-client communications under *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In *Upjohn,* the Supreme Court held that corporate counsel for Upjohn was not required to divulge files underlying an internal investigation into improper payments by a subsidiary, the results of which were voluntarily disclosed to the SEC. Reversing the court of appeals' decision that the files were not protected to the extent they contained interviews of personnel not within Upjohn's "control group," the court noted that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. at 683. Thus, the Court reasoned, the privilege can exist between counsel and middle or lower-level employees if those employees "would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to

such actual or potential difficulties." *Id.* at 391, 101 S.Ct. at 683.

■ With these concepts in mind, clearly the Memoranda fall within the attorney-client privilege. Like the investigation in *Upjohn,* the Memoranda were produced at the request of the Bank's counsel to determine the nature and extent of the Bank's involvement in any potentially improper activities of M & L. *See id.* at 394, 101 S.Ct. at 685; *First Chicago Int'l v. United Exchange Co.,* 125 F.R.D. 55, 56–58 (S.D.N.Y.1989) (documents prepared by bank in connection with its investigation of fraud by bank employee protected by privilege). There is even less question that the Letters are subject to the attorney-client privilege. Both letters were written by the Bank's counsel and directed to its vice-president for human resources. They contain advice about how the Bank should respond to a former employee's claim for unemployment benefits. *See Western Trails, Inc. v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4, 14 (D.D.C.1991) (preliminary drafts of letters, to be published to third parties and intended to be confidential, held privileged). Consequently, I conclude that both the Letters and the Memoranda are protected by the attorney-client privilege.

B. *Waiver of the Privilege.*

■ Generally, the attorney-client privilege is lost if the substance of the confidential communication is disclosed to a third party, even inadvertently. *See United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.), *cert. denied,* 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). Anticipating the Trustee's contention that the Bank waived the privilege by providing the Letters and Memoranda to the U.S. Attorney under the Letter Agreement,[1] the Bank offers three reasons

why this disclosure did not effect a waiver. First, the Bank claims that the Letters and Memoranda are also subject to the qualified privilege for law enforcement materials. Second, it maintains that these materials were shared with the U.S. Attorney because both had a common interest in the litigation. Third, the Bank argues that its provision of information to the U.S. Attorney was a limited waiver of the privilege as to the Criminal Case only, and not as to any subsequent proceedings. The Trustee responds that none of these purported exceptions to the doctrine of waiver apply.

1. *Qualified Privilege for Law Enforcement Materials.*

■ "The purpose of the law enforcement privilege is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation.'" *United States v. Davis,* 131 F.R.D. 391, 395 (S.D.N.Y.1990) (citing *In re Department of Investigation,* 856 F.2d 481, 484 (2d Cir. 1988). The privilege may be overridden by the movant's "substantial need for the documents and its inability to obtain their substantial equivalent by other means." *Id.; see also Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir. 1984). This and related governmental privileges belong to the government alone and must be asserted by it. They cannot be claimed by a private party. *See United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981) (identifying the law enforcement investigative privilege as one of the privileges "exclusively reserved for the Government");

**1.** There appears to be some question as to who furnished the Memoranda to the U.S. Attorney. The Bank contends that it did not provide them under the Letter Agreement and has no idea how they became part of the grand jury's files. The Trustee argues that, because she found the Memoranda among other personnel files of the Bank, it is clear that the Bank provided them to the U.S. Attorney.

This dispute is of little relevance. If the Bank did not provide the Memoranda to the U.S. Attorney and they became part of the grand jury's files

by some other means, then the Bank did not waive the privilege as to them. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 349 & n. 5, 105 S.Ct. 1986, 1991 & n. 5, 85 L.Ed.2d 372 (1985) (power to waive attorney-client privilege rests with corporation's officers and managers; displaced personnel have no control over privilege). If it did include the Memoranda in the package of documents given to U.S. Attorney under the Letter Agreement, then my analysis below applies.

*cf. United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–532, 97 L.Ed. 727 (1953).

■ As the above authorities make clear, the Bank may not assert the qualified privilege relating to law enforcement materials for its own benefit. Only the government may do so. In this case, the U.S. Attorney did not resist the Trustee's request to gain access to the grand jury files in the Criminal Case. Therefore, the Bank's assertion that the documents provided under the Letter Agreement are subject to the qualified privilege for law enforcement materials fails.

### 2. *Common Interest Rule.*

The Bank next argues that it did not waive the attorney-client privilege as to the Letters and Memoranda by providing them to the U.S. Attorney because both the Bank and the federal government have a common interest in the prosecution of federal banking crimes. In *United States v. American Telephone & Telegraph Company,* the court discussed the common interest exception to the doctrine of waiver:

> The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. But "common interests" should not be construed as narrowly as limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary. When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger.

642 F.2d 1285, 1299–1300 (D.C.Cir.1980). The court in *AT & T* addressed waiver in connection with work product immunity, the standard for which is more liberal than for the attorney-client privilege at issue here. *Id.* at 1299 ("strict standard of waiver in the attorney-client privilege context, ... [is not]

appropriate for work product cases"). Nevertheless, even applying this more flexible standard here, the common-interest exception to waiver does not apply.

■ The Bank's disclosure of the Letters and Memoranda to the U.S. Attorney was not based on the prosecution of or defense against a common adversary. The Bank's adversary is the Trustee; the U.S. Attorney's adversaries are the defendants in the Criminal Case. The issues in these two proceedings are distinct. The Trustee seeks to recover transfers which were improper under the Bankruptcy Code; the U.S. Attorney is seeking to hold the certain individuals criminally liable for federal banking crimes. Finally, the Bank and the U.S. Attorney's purported joint interest in prosecuting federal banking crimes is too abstract to permit the Bank to benefit from the common interest exception. *See In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir.1984) (no common interest between law firm and SEC as to materials provided as part of voluntary disclosure program). Accordingly, the Bank cannot avoid waiver under the common-interest exception.

### 3. *Limited Waiver.*

The Bank's third and final contention is that it effected only a limited waiver of the attorney-client privilege by furnishing the Letters and the Memoranda to the U.S. Attorney, relying on *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1977), and cases decided under its rationale. In *Meredith,* the court considered whether a corporation waived the attorney-client privilege with respect to materials voluntarily surrendered to the SEC pursuant to an agency subpoena. Because the corporation had disclosed the documents in a "separate and nonpublic SEC investigation," the court held that the privilege had not been waived. *Id.* at 611. "To hold otherwise," the court reasoned, "may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers." *Id.* While a number of courts have recognized the limited waiver doctrine

first enunciated in *Meredith, see, e.g., United States v. Shyres*, 898 F.2d 647, 657 (8th Cir.) (privilege not abrogated by disclosure of internal investigation to grand jury), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990); *United States v. Buco*, No. 90–10252–H, 1991 WL 82459 at *2 (D.Mass. May 13, 1991) (disclosure to Office of Thrift Supervision did not waive privilege as to internal investigation of banking violations); *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 688–89 (S.D.N.Y.1980); *In re Grand Jury Subpoena Dated July 13, 1979*, 478 F.Supp. 368, 372–73 (E.D.Wis.1979); *cf. Biben v. Card*, 119 F.R.D. 421, 428 (W.D.Mo.1987) (reports by outside counsel relating to internal corporate housekeeping subject to privilege even though disclosed to SEC), others have not.

The leading case rejecting *Meredith* is *Permian Corporation v. United States*, 665 F.2d 1214 (D.C.Cir.1981). In *Permian*, a corporation permitted the SEC to access voluminous documents in response to its investigation of the corporation's registration statement for a proposed stock exchange offer after purportedly obtaining the SEC's agreement to limit disclosure of the documents. *See id.* at 1216. Several months later, the Department of Energy sought access to the same documents in its investigation of the corporation's petroleum pricing regulations. The corporation objected, its objection was overruled, and the corporation appealed. *Id.* at 1217.

On appeal, the circuit court affirmed the trial court's finding that the attorney-client privilege had been waived, notwithstanding the corporation's agreement with the SEC regarding nondisclosure. First, it held the agreement too weak in preventing disclosure of the documents. *Id.* at 1219–20. In addition, it rejected the *Meredith* notion of limited waiver, reasoning that while

> [v]oluntary cooperation with government investigations may be a laudable activity, . . . it is hard to understand how such conduct improves the attorney-client relationship. If the client feels the need to keep his communications with his attorney confidential, he is free to do so under the traditional rule by consistently asserting

the privilege, even when the discovery request comes from a "friendly" agency.

*Id.* at 1221. Finally, because it inhibits the truth-finding process, the court noted that the attorney-client privilege must be construed narrowly, especially to prevent litigants from selectively asserting the privilege as a tactical tool for their own benefit. This was particularly true in *Permian* because the corporation had made disclosures to the SEC to expedite approval of its exchange offer, but then resisted disclosure in Department of Energy administrative proceedings. *Id.* at 1221. Several other courts have followed *Permian's* strict approach to waiver of the attorney-client privilege. *See Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423–27 (3d Cir.1991); *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (9th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *In re Subpoenas Duces Tecum*, 738 F.2d at 1371–75; *In re Sealed Case*, 676 F.2d 793, 823–24 (D.C.Cir.1982).

While *Meredith* and *Permian* represent opposite ends of the spectrum regarding the doctrine of limited waiver, there is a compromise position. That view, represented by *Teachers Insurance & Annuity Association of America v. Shamrock Broadcasting Co.*, 521 F.Supp. 638 (S.D.N.Y.1981), holds that a limited waiver will be recognized only when a litigant expressly reserves the right to assert the privilege in other proceedings when disclosing confidential information to a government agency. The court reasoned that "a contemporaneous reservation or stipulation would make it clear that . . . the disclosing party has made some effort to preserve the privacy of the privileged communication, rather than having engaged in abuse of the privilege by first making a knowing decision to waive the rule's protection and then seeking to retract that decision in connection with subsequent litigation." *Id.* at 646; *see also Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 526–27 (N.D.Cal.1988); *Schnell v. Schnall*, 550 F.Supp. 650, 653 (S.D.N.Y. 1982); *cf. SEC v. Amster & Co.*, 126 F.R.D. 28, 30 (S.D.N.Y.1989) (recognizing limited waiver if party holding privilege and government have entered into binding agreement

protecting privilege). In this way, the *Teachers Insurance* view strives to balance the policy goal of encouraging cooperation with the government noted in *Meredith* with the strict requirement of confidentiality held paramount in *Permian*. *See Fox,* 120 F.R.D. at 526.

■ At least one commentator has characterized the case law addressing the issue of limited waiver as in a state of "hopeless confusion," John W. Gergacz, *Attorney–Corporate Client Privilege* at 5–53 (2d ed. 1990), and the Tenth Circuit has yet rule on this issue. Nevertheless, while I am wary of extending evidentiary privileges, in the unique circumstances of this case, the policies upon which the above decisions were based lead me to conclude that the Bank has not waived the attorney-client privilege as to the Letters and Memoranda. *See United States v. Buco,* 1991 WL 82459 at *2 (acknowledging general rule that disclosure, even if inadvertent, waives the privilege but holding that important public policy considerations militate against finding that bank's submission of materials to federal regulators waived privilege).

First, in this case, the Bank took substantial steps to ensure that its disclosures to the U.S. Attorney would be kept confidential. The Letter Agreement drafted by the Bank's Counsel noted that the results of its internal investigation of the Bank's relationship with M & L was considered both privileged and work product developed in the course of the firm's representation of the Bank, that the Bank was in the process of making a referral of suspected criminal activity to the Federal Reserve, and that the sharing of this information was necessary to provide law enforcement authorities with sufficient information to effectuate the referral. Furthermore, the Letter Agreement expressly states that the provision of information does not constitute a waiver of the privilege as to any proceeding under state or federal law. In addition, by acknowledging the Letter Agreement, the U.S. Attorney agreed to treat the information provided as privileged, confidential and protected under Fed.R.Crim.P. 16(a)(2) and not to disseminate the information to any other party except as required by federal law or the rules of criminal procedure. Even cases rejecting the concept of limited waiver recognize that government agencies may enter into such agreements limiting disclosure. *See In re Sealed Case,* 676 F.2d at 824 (SEC and other government agencies may "expressly agree to any limits on disclosure to other agencies consistent with their responsibilities under law").

Second, there is no evidence that the Bank's cooperation with the U.S. Attorney was for the purpose of obtaining some benefit for itself. Its participation in the investigation was in compliance with its duty to cooperate in the reporting and prosecution of financial institution crimes as mandated by Federal Reserve System procedures. *See* Supervision and Regulation (SR) Letter 85–22, 1 *Federal Banking Law Reporter* (CCH) ¶ 11,631 at 6611, n. 1 (August 16, 1985); SR Letter 88–9, [1987–1988 Transfer Binder] *Federal Banking Law Reporter* (CCH) ¶ 87,-267 at 93,631 (March 18, 1988). Unlike the SEC's voluntary disclosure program, which "promises wrongdoers more lenient treatment and the chance to avoid formal investigation and litigation in return for thorough self-investigation and complete disclosure of the results to the SEC," *In re Subpoenas Duces Tecum,* 738 F.2d at 1369, under the Federal Reserve System's criminal referral procedures,

> [i]t is the duty of a financial institution to make an immediate written report to the appropriate U.S. Attorney, FBI and the Federal Reserve Bank ... concerning a crime, suspected crime, or unexplained loss suffered by the institution and the duty of a financial institution to facilitate the prosecution of those committing crimes against it.

SR Letter 85–22, *supra* at 6611 n. 1.

Finally, the Bank does not seek to protect the privilege in an investigatory or law enforcement proceeding brought by another federal regulatory agency. The Trustee's adversary proceeding is akin to one brought by a civil litigant. Cases on both sides of this issue recognize that the circumstances for finding a waiver are more compelling when the holder asserts the privilege against a federal agency or grand jury as opposed to

a private litigant. *See In re Sealed Case,* 676 F.2d at 829; *Schnell v. Schnall,* 550 F.Supp. at 652. For these reasons, I conclude that the Bank's waiver of the attorney-client privilege in the Letters and Memoranda was limited to the Criminal Proceedings and does not extend to these consolidated adversary proceedings.[2] Accordingly,

IT IS ORDERED THAT the Bank's motion to permit the filing of exhibits under seal and for protected disclosure of sealed exhibit is GRANTED to the extent that the exhibits will be subject only to in camera review and upon entry of this order shall be returned to the Bank; and

IT IS FURTHER ORDERED THAT the Bank's motion for protective order is GRANTED.

---

2. Because I conclude that the Letters and Memoranda are protected by the attorney-client privilege, I do not address the Bank's contention that they are also protected by work product immunity.