In re M & L BUSINESS MACHINE
CO., INC., Debtor.

Christine J. JOBIN, Plaintiff,

v.

BANK OF BOULDER, Defendant.

Civ. A. No. 91–K–1065.
Bankruptcy No. 90–15491 CEM.

United States District Court,
D. Colorado.

May 16, 1994.

Christine J. Jobin, Denver, CO, pro se.

Charles F. McVay, Denver, CO, for plaintiff.

Joseph C. French, Boulder, CO, Nancy D. Miller, David R. Eason, Eason, Sprague & Wilson, Harold Feder, Steven R. Newell, Martin A. Bloom, Denver, CO, Daniel Hatch, Louisville, CO, Carol Joseph, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case was set for a two-week jury trial commencing on June 13, 1994. As set forth below, I have stricken the trial date, grant Defendant's motions for sanctions and enter new pre-trial orders. As will soon be evident, this litigation is not a paradigm of efficient management.

## I. *Procedural Background.*

On March 12, 1991, Plaintiff Christine J. Jobin, trustee for the estate of M & L Business Machine Co., Inc. ("Trustee"), filed Adversary Proceeding No. 91–1224 SBB in bankruptcy court, naming the Bank and others as defendants. In her original complaint, the Trustee sought to recover certain preferences from the Bank under 11 U.S.C. § 547. The Trustee has since expanded the claims against the Bank to include additional preferential transfers under § 547, fraudulent transfers under § 548 and voidable transfers under § 544. On January 29, 1992, reference of the adversary proceeding was withdrawn and the case was assigned to Judge Carrigan under Case No. 91–C–1065.

On December 18, 1991, Richard Demmitt commenced Case No. 91–M–2204 against the Bank of Boulder, asserting claims arising from the Bank's handling of certain wire transfers in connection with M & L. Demmitt amended his complaint on April 14, 1992, joining the Trustee as an indispensable party. On the Trustee's motion, the case was consolidated for discovery purposes with Case No. 91–K–1065 on June 12, 1992 by Judge Carrigan, as Demmitt's claims were similar to those asserted by the Trustee against the Bank. The Trustee then filed certain counter- and cross-claims against Demmitt and the Bank.

On March 22, 1993, Judge Carrigan transferred the consolidated case to me. Two days later, I entered an order remanding it to the bankruptcy court for pretrial proceedings, with the case to be returned to the district court when discovery was complete and a pretrial order recommended. On June 22, 1993, I granted the Trustee's motion to set a date for trial, which, on the Bank's motion, was reset to June 13, 1994.

On December 17, 1993, I granted Demmitt's stipulated motion dismissing his claims against the Bank in Case No. 91–K–2204. 161 B.R. 689. Demmitt and the Trustee also reached a settlement of their claims. The Trustee then sought and obtained an order dismissing her cross-claims against the Bank in Case No. 91–K–2204, which were the same as the fifth and sixth claims in third amended complaint in Case No. 91–K–1065.

## II. *Pending Motions.*

### A. *Motion for Sanctions Under Rule 37.*

On April 12, 1994, the Bank moved for sanctions against the Trustee under Fed. R.Civ.P. 37(b)(2).[1] The Bank argues that it is entitled to sanctions under this rule because the Trustee has repeatedly failed to provide nonevasive answers to its interrogatories after she was ordered to do so by the Bankruptcy Court. It requests me to strike certain portions of the Trustee's claims under §§ 544, 547 and 548 and award it reasonable attorney fees. The Trustee responds that the motion is procedurally incorrect, she has fully complied with the Bank's discovery requests, and it is simply an "eleventh hour tactic" designed to detract from the strength of her claims. (Resp. Mot. Sanctions at 2.)

■ Rule 37(a) permits a party to apply to the court for an order compelling disclosure or discovery. For example, if a party fails to answer an interrogatory submitted under Rule 33, "the discovering party may move for an order compelling an answer." Fed. R.Civ.P. 37(a)(2)(B). If the motion is granted and the party "fails to obey an order to provide or permit discovery," then under Rule 37(b)(2) the court may impose certain sanctions, such as designating certain facts as established, disallowing the opposition of claims or defenses, preventing the introduction of evidence, or striking pleadings in part or in their entirety. Whether to impose sanctions under this rule is a matter of discretion. *See Willner v. University of Kansas,* 848 F.2d 1023, 1030 (10th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

■ The parties first dispute whether there has been an order compelling discovery. The Bank filed a motion to compel discovery on March 3, 1993. The motion,

---

1. In compliance with my procedural order remanding pretrial matters to the bankruptcy court, the Bank first filed its motion for sanctions there. The motion was set for hearing on April

6, 1994. At that hearing, however, Judge Brumbaugh declined to rule and said that he would defer to me on the motion. The Bank accordingly refiled it here.

along with others, was heard by Bankruptcy Chief Judge Matheson on May 28, 1993. The record from this point on is unclear. The transcript of the May 28 hearing indicates that the bankruptcy court addressed two motions to compel brought by the Bank, (*see* Tr. at 8–9), and that apparently the parties agreed that the Trustee would respond to the first motion (apparently the Bank's March 3, 1993 motion) by June 30, 1993, (*see* Tr. at 9.) This agreement was memorialized in a June 2, 1993 order entered by the bankruptcy court. Although the Trustee claims that the bankruptcy court never granted the Bank the relief it requested in its motion to compel, this assertion is not supported by the record.[2]

Given the bankruptcy court's order requiring supplementation of the Trustee's interrogatory responses, the parties next dispute whether that supplementation was sufficient to comply with the order. The Bank argues that, despite its repeated requests for an identification of the allegedly avoidable transactions and a description of the legal basis underlying certain of the Trustee's claims, the Trustee continues to provide evasive answers to the interrogatories which were the subject of its motion to compel. Under Rule 37(a)(3), an evasive or incomplete answer is "treated as a failure to disclose, answer, or respond." The Trustee maintains that her responses were more than adequate. Thus, the essential question is how far the Trustee must go in specifying the factual basis and legal theories supporting her claims.

■ I have reviewed the correspondence between the Bank and the Trustee from September through December, 1993 concerning her July 9, 1993 supplemental responses. While the Trustee eventually provided some of the information the Bank requested, her approach throughout discovery in this case has not been forthcoming. There are numerous examples of the Trustee's reluctance to reveal the basic elements of her claims against the Bank.[3] At this

---

2. The Trustee, in what is now characteristic fashion, attempts to create a factual dispute over whether the bankruptcy court ever entered an order granting the motion to compel. She states:

> [T]he Bank represents that it filed a Motion to Compel on March 3, 1993, and that thereafter, on June 2, 1993, an Order was entered by the Court ordering that the Trustee provide supplementation to her discovery responses. The representation or the intimation that the June 2, 1993 Order was entered in response to the Motion to Compel or that it accorded the relief requested therein is patently false, as is more fully explained below.

(Resp. Mot. Sanctions at 3.)

This statement stems from the fact that the Bank attached a copy of the wrong order as Exhibit A to its motion for sanctions, even though the correct order was referred to by title in the text of the motion. Both orders were entered on the same day, June 2, 1993, and dealt with similar issues. The Trustee's attempt to ascribe evil motives to the Bank based on this simple mistake is inexcusable. Moreover, contrary to the Trustee's disingenuous assertion that the bankruptcy court did not grant the Bank the relief it requested, she clearly felt bound by the obligation to supplement her interrogatory responses because she sought and obtained an extension of time to do so until July 9, 1993.

3. For example, her response to several interrogatory requests has been to invoke Rule 33(c), (now Rule 33(d) under the recently amended rules), which permits a party served with an interrogatory to specify the business records from which the answer may be obtained and to give the inquiring party an opportunity to review those records. In this case, the Bank had requested the Trustee to identify specifically the date, amount, source and manner of the alleged preferential and fraudulent transfers, and the Trustee responded by directing the Bank to "all documents evidencing transactions by and among M & L, Joseph and the Bank."

Such a response is inappropriate. The rule targets situations in which the interrogatory would "require a party to engage in a burdensome or expensive search into *his own business records* in order to give an answer." Fed. R.Civ.P. 33, advisory committee's notes. The records referred to, at least those of the Bank or prepared by third party experts, are not M & L's business records. Therefore, Rule 33(c), which the Trustee has repeatedly invoked, is not applicable.

In response to other interrogatories seeking similar information, the Trustee referred the Bank to expert reports to be provided in the future and/or containing voluminous statistical exhibits and other detailed computerized banking records and files. With respect to the certain documents, the Trustee declined to specify which of the transactions reflected therein were associated with each of her claims, advising the Bank that "[y]our application of the elements of the claims under the Bankruptcy Code will give you all of the analysis you need to determine the claims under the § 547 and 548 claims."

She also apparently targets transfers made by M & L principals on their personal loans without

point, it would be inefficient to try to reconstruct the areas in which the Trustee has and has not complied with the order compelling supplemental responses to the Bank's interrogatory requests. Despite my remand order of March 24, 1993, there is no pretrial order and no straightforward delineation of the Trustee's claims. The bottom line, however, is that she has failed to be candid about identifying the specific transactions she seeks to avoid under §§ 544, 547 and 548 of the Bankruptcy Code. The information requested by the Bank, essentially a description of each transfer which the Trustee seeks to avoid, must be memorialized in a pretrial order and each exhibit which the Trustee intends to offer as proof of each transaction must be specifically identified in each memorialization. In addition, I award to the Bank its reasonable costs and attorney fees incurred in pursuing this motion. *See* Fed. R.Civ.P. 37(b)(2).

### B. *Motion for Sanctions.*

In addition to the above motion for sanctions under Rule 37, there is another motion for sanctions still pending. That motion, which the Bank filed on November 18, 1993, sought sanctions against the Trustee for violation of my November 3, 1993 order regarding a motion to file documents under seal and motion for protective order (the "Protective Order"). *See Jobin v. Bank of Boulder (In re M & L Business Machine Co.),* 161 B.R. 689 (D.Colo.1993). The Bank claims that, in the Protective Order, I not only held that certain letters and memoranda were protected by the attorney-client privilege, but I also directed the Trustee to return to the Bank any copies of the letters or memoranda which she had in her possession. The Bank requests sanctions against the Trustee because she apparently destroyed these documents without the Bank's or my permission, on the grounds that they contained her work product.

I held a hearing on this motion on December 13, 1993. At that hearing, I directed Mr. Ehrlich, Chief Deputy Clerk of the court, to

clarifying how the transfer is connected to or property of the Debtor. She likewise appears to include within the scope of her § 547 claim service charges paid by M & L and its principals

accompany the Trustee and the Bank's counsel to the M & L grand jury room to allay the Trustee's concern that the letters and memoranda were included within the grand jury's materials (and therefore not voluntarily provided by the Bank under the letter agreement and not protected by the attorney-client privilege.) These parties, along with a U.S. Attorney and an FBI agent, reviewed the grand jury files at issue on December 30, 1993. At that time, the U.S. Attorney disclosed that, while the memoranda were included with the grand jury documents, a party or parties other than the Bank provided them to federal investigators. The letters were also apparently included in the grand jury documents, but the U.S. Attorney made no disclosure as to how they got there.

In her January 4, 1994 response to the motion for sanctions, the Trustee seeks to deflect the focus on her conduct by essentially arguing that the Protective Order should not have been granted because the Bank was compelled by grand jury subpoena to produce the letters and memoranda. She then states that

> [t]here can be no dispute that the destruction of the Documents was, with hindsight, an improvident course of action, but was one that was justified in the circumstances.... The destruction was not the product of an intent or motive to defy this Court's Order, nor was it in defiance of any clear directive by counsel not to destroy the Documents. Rather, it was an attempt to satisfy the Bank and its counsel's insistent and repeated requests to get the Documents out of counsel's hands. Perhaps, if the Bank's counsel had not barraged the Trustee's counsel with daily letters demanding the Documents, the destruction might not have happened.

(Status Report & Req. Order Den. Mot. Sanctions at 5–6.)

To complicate matters further, on February 9, 1994, the Bank filed a supplement to

on their accounts with the Bank without specifying the antecedent debt with respect to these charges. Other deficiencies are described in the Bank's motion for sanctions.

its motion for sanctions. The supplement contains evidence that the Trustee has misrepresented to the court that she did not have access to the letter agreement between the Bank and the U.S. Attorney pursuant to which the Bank asserts it provided the letters and memoranda to the U.S. Attorney. When responding last fall to the Bank's motion for Protective Order, the Trustee stated, "[u]ntil such time as the Trustee can review the Subpoena and the *letter agreement,* she cannot fully respond to the Bank's Motion for Protective Order, hence this Response is being filed as a Preliminary Response." (Trustee's & Richard Demmitt's Prelim. Resp. Mot. Protective Order at 7–8) (emphasis added). Yet, after reviewing documents subpoenaed from the Trustee's expert in January, 1994, the Bank obtained a copy of a facsimile transmission by the Trustee dated March 23, 1993, in which she forwarded a copy of the letter agreement to the expert. Clearly, the Trustee had access to letter agreement well before she filed the above response to the Bank's motion for Protective Order, despite her statements to the contrary to the court.

■ I have several comments about this motion for sanctions. First, the basic premise of the Bank's motion for sanctions is that the Trustee violated the Protective Order by not returning the letters and memoranda to it. Yet, if one reads the Protective Order, this requirement is nowhere expressed. Instead, the Protective Order simply states that the documents *the Bank* submitted under seal in connection with the motion "will be subject only to in camera review and upon entry of this order shall be returned to the Bank...." 161 B.R. at 697. Therefore, the Trustee did not expressly violate the Protective Order by destroying the letters and memoranda, although her conduct was otherwise reprehensible.

■ Second, I disagree with the Trustee's contention in her response to the motion for sanctions that the Protective Order should be vacated because there is now clear evidence that the Bank provided the letters and memoranda under subpoena, and not voluntarily under the letter agreement. As I observed in the Protective Order,

[O]n its face, the Letter Agreement supports the Bank's contention that it provided information to the U.S. Attorney to effectuate a criminal referral and not because it was compelled by a grand jury subpoena. The Trustee has yet to provide any evidence to the contrary. Therefore, I assume for the purposes of the Bank's motion for protective order that the Letters and Memoranda were provided under the Letter Agreement and not by subpoena. If the Trustee obtains permission in the Criminal Case to review the Letter Agreement and the subpoenas, if any, and, based on that review, believes this assumption to be incorrect, she may move for modification of this order to the extent my reasoning herein is affected by that assumption.

(Order Re: Mot. File Docs. Under Seal & Mot. Protective Order at 5–6.) The only new evidence the Trustee has uncovered confirms that some third party, *not* the Bank, provided the memoranda to the U.S. Attorney in connection with the criminal investigation of M & L. Therefore, there is no basis to modify the Protective Order. (*See id.* at 8 n. 1) (noting that there would be no waiver of the privilege if the memoranda were provided to the U.S. Attorney by third party). I discuss this issue in more detail below, in connection with the Trustee's motion to examine subpoenas.

■ Finally, while the original basis for the Bank's motion for sanctions is without foundation, in that I did not expressly order the Trustee to return the privileged documents to the Bank, the Bank's supplement to the motion clearly shows that the Trustee misrepresented to the court that she did not have access to the letter agreement. Therefore, I will enter appropriate sanctions for this misconduct.

### C. *Motion for Order Permitting Examination of Subpoenas.*

In a related motion filed on January 13, 1994, the Trustee requests permission to review and copy certain subpoenas, if any, served on the Bank and other individuals. In addition, she requests authorization "to

obtain and/or present documents by the government to the Grand Jury which returned indictments in the Criminal Case Captioned *United States of America v. Robert G. Joseph, et al.,* Case No. 92–CR–075...." (Mot. Exam. Subpoena at 1.) I have no idea what she means by the latter request. The Trustee's intent in seeking access to the subpoenas is to establish that the Bank turned over the letters and memoranda discussed above pursuant to a subpoena, and not pursuant to the letter agreement with the U.S. Attorney. If this is the case, she argues, they are not subject to the attorney-client privilege and the Protective Order should be modified. I deny this motion.

As I discussed above, there is no "new information" which supports the Trustee's suspicion that the Bank's turnover of letters and memoranda was pursuant to the grand jury's subpoena. (*See* Mot. Exam. Bankr. Trustee Selected Subpoenas at 3). In fact, there is greater support for the Bank's contention that it did not do so. During the December 30, 1993 examination of the grand jury files, the U.S. Attorney disclosed that the copies of the memoranda found in the M & L grand jury files, which the Trustee suspected were provided by the Bank, were instead received from one or more third parties whose identities were not disclosed. The Trustee's attempt to characterize the U.S. Attorney's disclosure as supporting her theory is disingenuous.

 Moreover, even if the Bank was compelled by subpoena to disclose the letters and memoranda to the government, the Trustee does not explain how this abrogates my analysis in the Protective Order that the documents are subject to the attorney-client privilege. Production of documents under a grand jury subpoena does not automatically vitiate the attorney-client privilege, much less in an unrelated civil proceeding brought by a non-governmental entity. This is especially true in a case such as this, where the record demonstrates that the Bank has consistently sought to protect its privilege. *See, e.g., In re Search Warrant for Law Offices Executed on Mar. 19, 1992,* 153 F.R.D. 55, 59 (S.D.N.Y.1994) (no waiver of attorney-client privilege with respect to documents provided to U.S. Attorney in response to subpoena where government had agreed to measures protecting confidentiality); *In re Grand Jury Investigation,* 142 F.R.D. 276, 287–79 (M.D.N.C.1992) (inadvertent disclosure of privileged documents subpoenaed by grand jury did not constitute waiver). Trustee's repetitive and futile hope of establishing that the Bank waived the privilege in the letters and memoranda rests on pure speculation that their disclosure was by subpoena alone, and not under the more restrictive letter agreement. The facts thus far do not bear this out; nor is it clear that, on their face, the subpoenas to which the Trustee seeks access would conclusively confirm her theory.

In sum, the Trustee's motion is without factual support and would again require intrusion into private grand jury matters. It was once denied by Judge Nottingham, who presides in the criminal case. For these reasons, I deny the motion to examine the subpoenas.

### D. Motion for Order Modifying Dismissal of Crossclaim in 91–K–2204.

 On December 30, 1993, the Bank moved for modification of my order dismissing the Trustee's cross-claims against the Bank in Case No. 91–K–2204, which was consolidated with this case for discovery purposes. The cross-claims in Case No. 91–K–2204 are identical to the Trustee's fifth and sixth claims in Case No. 91–K–1065. Therefore, when Richard Demmitt, the plaintiff in Case No. 91–K–2204, reached a settlement with the Trustee and the Bank and his claims were dismissed, the Trustee sought an order dismissing her cross-claims against the Bank, which were duplicative of claims raised in Case No. 91–K–1065. I granted the motion and further ordered that "the written discovery requests served by the Bank of Boulder on the Trustee on December 1, 1993, are rendered moot by the dismissal of Demmitt's claims against the Bank and the Trustee's dismissal of the Crossclaim." (Order Dismissing Crossclaim at 2.) The Bank now requests modification of this aspect of the order.

As the Bank explains the issue, with the dismissal of the cross-claims and my ruling

that the Bank's discovery requests relating thereto are moot, the Bank is effectively precluded from any discovery on the Trustee's identical fifth and sixth claims in Case No. 91–K–1065. The Bank asserts that the Trustee misrepresented the facts to me in the following statement in her motion:

> The Trustee submits that the Bank certainly knew of the ongoing settlement negotiations at the time it served the last round of discovery requests in Civil Action No. 91–K–2204 and should have anticipated the dismissal of Demmitt's claims, dismissal of the Counterclaim, and conclusion of Civil Action No. 91–K–2204. The discovery requests could have been served in Civil Action No. 91–K–1065, but they were not. Moreover, the Bank will not in any way be prejudiced as it continues to conduct full discovery in Civil Action No. 91–K–1065.

(Mot. Dismiss Crossclaim, ¶ 12.) In fact, in light of a December 31, 1993 discovery deadline set by the bankruptcy court (of which the Trustee did not advise me), the Bank *is* prejudiced by my ruling that its discovery requests in Case No. 91–K–2204 were moot because it is now barred from further written discovery in Case No. 91–K–1065. The Bank points out that:

> This discovery was served under the consolidated caption for Cases No. 91–K–1065 and 91–K–2204, and is clearly directed to the post-petition transactions which comprise the subject matter of the two sets of identical claims asserted by Ms. Jobin in both Cases, even though it refers to her crossclaims for convenience of reference. Contrary to Ms. Jobin's assertions ... the Bank submits that the very purpose of consolidation of the two cases was to avoid the necessity of duplicative discovery in the two cases, especially in this situation where the two sets of corresponding claims in the two actions are identical. Certainly, by consolidating these actions for discovery on the basis that they both involved identical factual and legal issues relating to these post-petition transactions, the Court did not contemplate that the Bank would be required to serve two separate, yet identical, sets of discovery relating to identical claims. It is quite evident that, by

her Motion, Ms. Jobin is merely attempting to evade responding to appropriate discovery directed to her post-petition claims in the consolidated action.

(Mot. Modification at 5.)

The Bank's comments are well-taken, and I note that it did not have an opportunity to comment on the Trustee's motion before I ruled on it, but asserted its position on this issue in writing to the Trustee before she filed her motion. Therefore, I grant the Bank's motion for modification of my order dismissing the Trustee's cross-claim and require the Trustee to respond to the Bank's outstanding discovery requests which relate to claims in Case No. 91–K–1065.

E. *Motion for Partial Summary Judgment.*

■ On March 24, 1993, the Bank moved for partial summary judgment on the Trustee's claims under § 548(a)(2) and § 548(c). Under my order remanding this and other cases to the bankruptcy court for pre-trial proceedings, this motion should have been filed in bankruptcy court. My review of the docket indicates that, to date, the Trustee has not responded to this motion (at least not in the district court). In view of the other orders entered herein and my authorizing the Bank to file additional motions after discovery is completed, I deny the pending motion for partial summary judgment without prejudice so that it may be refiled if the Bank elects to do so after discovery.

### III. *Conclusion.*

IT IS ORDERED THAT the Bank's motion for sanctions under Rule 37 is GRANTED, in that the Trustee shall supplement her interrogatory responses as requested in the motion, and the Bank shall be awarded its reasonable costs and attorney fees for filing the motion; and

IT IS FURTHER ORDERED THAT the Bank's November 18, 1993 motion for sanctions, as supplemented, with respect to the Trustee's misrepresentation that she did not have access to the letter agreement, is GRANTED, and the Bank is awarded its

reasonable costs and fees for filing the motion; and

IT IS FURTHER ORDERED THAT the Trustee's January 13, 1994 motion for examination of subpoenas is DENIED; and

IT IS FURTHER ORDERED THAT the Bank's December 30, 1993 motion for modification of my order dismissing the Trustee's cross-claims is GRANTED as provided herein; and

IT IS FURTHER ORDERED THAT the Bank's motion for partial summary judgment is DENIED without prejudice to refile it after completion of discovery; and

IT IS FURTHER ORDERED THAT the trial date is STRICKEN and the order remanding this case to the bankruptcy court for pre-trial proceedings is WITHDRAWN; and

IT IS FURTHER ORDERED THAT, on or before June 1, 1994 the Bank shall file a verified itemization of costs and expenses, including attorney fees necessarily incurred and separately stated in connection with its motions for sanctions granted herein. The Trustee may file counteraffidavits on or before June 15, 1994 and, if an evidentiary hearing is required, one will be set on an expedited basis and I will award additional attorney fees and costs to the prevailing party occasioned by that hearing; and

IT IS FURTHER ORDERED THAT no document or exhibit will be admitted into evidence in the trial of this case upon the offer of the Trustee unless it is identified and provided to counsel for the Bank by July 1, 1994. Each such document or exhibit shall be specifically identified with respect to the claim or claims for relief to which it is intended to relate, the witness who will identify it at trial and a specific identification of any other documents which relate to the particularly offered document, but which themselves are not or will not be offered. As with other parts of this Order, these provisions will be interpreted so as to effectuate full disclosure; and

IT IS FURTHER ORDERED THAT each answer to each interrogatory shall be complete, shall not refer to any other source or answer, unless attached, and shall identify each document or exhibit needed to understand the answer fully and completely; and

IT IS FURTHER ORDERED THAT all of the Trustee's expert witnesses and their complete, final reports shall be provided to the Bank's counsel by July 1, 1994. No supplements, modifications or amendments to the reports shall be permitted and each expert shall be limited in his or her testimony at trial to those matters contained in his or her final report; and

IT IS FURTHER ORDERED THAT the Bank shall have until September 15, 1994 to depose any witnesses, including experts, to be called by the Trustee. It the parties cannot agree on the time and place of taking these depositions, they will be taken, pursuant to subpoena, in this courthouse, under judicial supervision, at a time convenient to the court; and

IT IS FURTHER ORDERED THAT the Bank shall have until October 1, 1994 to file any motions it elects to make. The motions, if any, shall be briefly stated and may include a supporting brief not to exceed ten pages in length. If filed the Trustee shall have ten days within which to file a written response not to exceed ten pages in length and the Bank may within five days thereafter file a reply brief not to exceed five pages. If so determined, the matter may be set for oral argument; and

IT IS FURTHER ORDERED THAT in providing full and complete answers to discovery, the Trustee may not request or demand agreements limiting the use of the data provided or insisting that it be treated with confidentiality. All information provided by virtue of orders in this case shall be used only for this case unless written authority by the court is first obtained for any other use; and

IT IS FURTHER ORDERED THAT any claim of privileged communication or work product must be timely raised, set forth with particularity and all relevant documents submitted under seal to the court; and

IT IS FURTHER ORDERED THAT the court reserves unto itself the option of imposing further and additional sanctions in the

event that any part of this order is not complied with fully. Further instructions will follow completion of the provisions herein with respect to a pre-trial order, filing of jury instructions and trial briefs.