**UNITED STATES of America, Plaintiff,**

v.

**Ronald W. SKEDDLE, et al., Defendants.**

**No. 3:95CR736.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 1, 1997.

Jon D. Richardson, Sr., Kaplan, Richardson, Rost & Helmick, Toledo, OH, William M. Connelly, Connelly, Soutar & Jackson, Toledo, OH, Peter R. Ginsberg, Gold & Wachtel, New York City, Robert Gold, Michael Sommer, McDermott, Will & Emery, New York City, for Ronald W. Skeddle.

Ronald W. Skeddle, Perrysburg, OH, pro se.

Sheldon S. Wittenberg, Wittenberg & Phillips, Toledo, OH, Stuart G. Nash, Brendan V. Sullivan, Jr., Barry S. Simon, Marcie R. Ziegler, Williams & Connolly, Washington, DC, for Darryl J. Costin.

Darryl J. Costin, Perrysburg, OH, pro se.

Jerome Phillips, Wittenberg & Phillips, Toledo, OH, Richard A. Hibey, Gordon A. Coffee, Michael K. Atkinson, Douglas N. Greensburg, Winston & Strawn, Washington, DC, for Edward B. Bryant.

Edward B. Bryant, Toledo, OH, pro se.

Gerald Arthur Messerman, Messerman & Messerman, Cleveland, OH, for David L. Herzer.

David L. Herzer, Vermilion, OH, pro se.

Niki Z. Schwartz, Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, John E. Martindale, Martindale, Bryztwa & Quick, Cleveland, OH, for Joseph G. Corsaro.

Joseph G. Corsaro, Bay Village, OH, pro se.

John J. Callahan, Toledo, OH, for John R. Purser.

John R. Purser, Whitehouse, OH, pro se.

John Czarnecki, Cooper, Walinski & Cramer, Toledo, OH, for Clarence H. Martin, aka Red Martin aka Red Martin.

Clarence H. Martin, Gahanna, OH, pro se.

J. Michael Murray, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for David M. Hobe.

David M. Hobe, Strongsville, OH, pro se.

Norman G. Zemmelman, Britz & Zemmelman, Toledo, OH, Sander Schwartz, Cook, Riley, Smith, Nance & Schwartz, Cleveland, OH, Richard G. Lillie, Lillie & Holderman, Cleveland, OH, for Floyd A. Trouten, III.

Floyd A. Trouten, III, Strongsville, OH, pro se.

Robert William Kern, Office Of The U.S. Attorney, Cleveland, OH, Thomas A. Karol, Office Of The U.S. Attorney, for U.S.

### Order

CARR, District Judge.

Pending in this case is a motion by the defendants Skeddle, Costin, and Bryant for reconsideration of two previous orders (Docs. 571, 602) denying their requests for production of materials obtained by The Fairfax Group (Fairfax), after that firm was retained by the defendants' former employer, Libbey–Owens–Ford Company (LOF), to investigate apparent misconduct by the defendants. The materials being sought by the defendants are records of interviews by Fairfax investigators. LOF has asserted work product privilege in the materials, and its claim was sustained in my two prior orders.

■ At the outset, I note that the defendants raise arguments in their motion for reconsideration that were not raised in any of their earlier briefs in support of their request for production for the Fairfax materials: namely, that LOF has no standing to assert its claim of work product privilege and the privilege has been waived.[1] To the extent the motion and the briefs filed in its support assert new arguments that were not raised in the original motion for production of the Fairfax materials, those arguments are untimely, and are overruled on that basis.

■ In any event, I disagree with the defendants that LOF has no standing to assert its work-product claim with regard to the Fairfax materials.[2] Although LOF is not a party to this case, it and the defendants are clearly adversaries. More importantly, it and the defendants are also engaged in litigation, including: 1) a civil suit in the Court of Common Pleas of Franklin County, Ohio; 2) a civil suit in this Court; and 3) an arbitration. To deprive LOF of the ability even to assert the work product privilege in this case might jeopardize its ability to assert its rights fairly in those civil suits once they resume after this case is completed.[3]

If LOF does not have standing, that will cause the rights afforded to a person or institution under the work product doctrine to evaporate whenever that person or institution has been the victim of a crime, has sought counsel with regard to possible civil remedies, and it or its counsel have become

1. In earlier motions, the defendants asserted that the privilege was waived when the materials were made available to the government and its agents, whose investigation led to the instant indictment. That was, however, the only basis on which waiver was asserted. Their *reply* brief relating to the instant motion for reconsideration claims for the first time that other disclosures of LOF documents require a finding that the claim of work-product privilege has been waived with regard to the Fairfax materials. Because that argument is untimely, the claim of such waiver, like the claim that LOF is without standing to assert the work-product privilege, is overruled on that separate and independent basis.

2. The defendants have renewed their contention, which they have made previously, that there is insufficient support in the record that the Fairfax materials constitute work product. I disagree.

Those materials were produced shortly after the defendants' alleged frauds came to light, and their production was followed within a matter of a few weeks by the filing of an arbitration action under the contract between the defendants and LOF and a state court lawsuit. There can be no doubt, in my mind, that by May, 1993, when the Fairfax interviews were conducted, LOF contemplated litigation against its three former officers. I also note that the officers, in turn, sent a letter shortly after their suspension demanding reinstatement, which could reasonably have been viewed as a prelude to a lawsuit on their part.

3. I note that defense counsel has not suggested how LOF's interest in the work product of its lawyers vis-a-vis those civil proceedings could be protected if the defendants' claim were upheld that LOF has no standing to seek to protect its work product in this proceeding.

witnesses in a criminal proceeding. This may not be a frequent occurrence, but it also is not unique to this case.

Whether, as in this case, such person or institution might feel an identity of interest with the prosecution does not matter. There is no basis, in my view, for depriving the victim of an alleged crime of the right to assert the protections of the work product doctrine simply because the government has taken steps—which no individual or institution can take on its own—to institute a prosecution. Indeed, in view of the heightened protection given to the work product doctrine, *United States v. One Tract of Real Property*, 95 F.3d 422, 427 (6th Cir.1996), it would be anomalous to refuse to acknowledge LOF's work product claim while, at the same time, extending the protections of the Jencks Act, 18 U.S.C. § 3500 to notes of interviews conducted by government agents, including, as is typically the case, agents who are not lawyers.

I acknowledge that the Sixth Circuit's decision in *Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co.*, No. 93–3084, 1994 WL 58999,1994 U.S.App. LEXIS 3828 (6th Cir.1994) (finding that, because entities from whom work product documents were sought were not parties to, or representatives of any parties to, the litigation in which subpoena arose, work product privilege did not protect such entities from discovery of those documents) provides support for the defendants' contention that third parties are not able to assert a work product privilege claim. In view, however, of the considerations enumerated above, and the distinctions between a criminal case, which only the government can prosecute, and civil proceedings, I believe that the Sixth Circuit, if presented with the question raised by the defendants, would adopt the position taken here. To do otherwise would unnecessarily jeopardize the work product privilege and the interests it protects.

I find, accordingly, that LOF has standing to assert its work product claim.

■ With regard to the issue of waiver, I find, notwithstanding the untimeliness of the arguments being asserted by defendants concerning subject matter waiver, that no waiver of the right to claim work product privilege with regard to the Fairfax materials has occurred. Even assuming that the disclosure of some work product materials waives the privilege as to all other work product materials on the same subject matter,[4] I find that, in light of authority in the Sixth Circuit construing waiver narrowly, LOF has not given up all work product immunity as to the Fairfax materials.

As I stated in an order filed contemporaneously herewith, those courts that have discussed subject matter waiver have given little guidance to trial courts as to the definition of "same subject matter." While the Sixth Circuit has implicitly adopted a narrow construction of subject matter waiver, *see In re Grand Jury Proceedings*, 78 F.3d 251, 255 (6th Cir.1996), it has not delineated the factors to which a trial court must look when determining the scope and content of the waiver.

■ In my contemporaneous order, I have outlined the factors that seem crucial in deciding whether disclosed and undisclosed communications are part of the same subject matter. These factors are easily transferable, and, I think, properly applied, to an inquiry into whether disclosed and undisclosed work product materials relate to the same subject. Among the factors which appear to be pertinent in determining whether disclosed and undisclosed communications relate to the same subject matter are: 1) the

---

4. Courts are divided on the issue of whether subject matter waiver applies in the work product context to the same extent as it does in the attorney-client privilege context. Noting that the policies behind the attorney-client privilege and the work product privilege are quite different, several courts have refused to transfer the subject matter waiver to the work product context. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222–23 (4th Cir.1976); *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C.1994); *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 (D.Mass.1993). Moreover, those courts that have applied subject matter waiver in the work product context have generally applied it only to non-opinion work product, *see, e.g., In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir.1988).

general nature of the lawyer's assignment; 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; 5) the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur.

Defendants claim that LOF's disclosure to them of several privileged documents constitutes a waiver of all work product documents relating to its investigation of the CTM, gas wells, and FAS transactions. I disagree: the limited disclosures made by LOF do not entitle defendants to pierce the work product privilege generally and thereby discover all work product materials prepared by LOF's in-house and outside counsel in relation to their investigation of defendants.

Applying the factors recited above, I find that the tasks being undertaken by LOF's counsel when it prepared and published the materials submitted by the defendants as exhibits differed significantly on their face from the work undertaken by the Fairfax interviewers. The interviewers were undertaking to find out as much as they could as quickly as they could about the defendants' self-dealing. They were simply collecting information for LOF and its counsel in view of the likelihood of litigation between the company and its former employees and others. The work product represented by the Fairfax materials reflects the understanding of the persons interviewed about the events recited in the interviews; it contains no evaluation, assessment, or interpretation of what had been learned. There is no common purpose or nexus between the Fairfax materials and the exhibits attached to the defendants' motion. To compel disclosure of the Fairfax materials simply because the work product

represented by the exhibits has been disclosed would jeopardize basic principles underlying the work product privilege. Any prejudice to or disadvantage incurred by the defendants can, in my view, be avoided by allowing limited disclosure.

■ As the foregoing discussion indicates, the Fairfax materials contain, for the most part, if not entirely, "fact" work product. "Fact" work product, as opposed to "opinion" work product, generally receives lesser protection. *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994); *Maloney v. Sisters of Charity Hosp.,* 165 F.R.D. 26 (D.C.N.Y.1995); *see also, In re Antitrust Grand Jury,* 805 F.2d 155, 168 (6th Cir.1986) (applying higher standard to waiver of to opinion work product than to factual work product). This is especially appropriate in a criminal prosecution, where unjustifiable barriers to discovery of the truth should not be raised.

■ In light of these considerations, I conclude that the defendants should receive copies of interviews of Fairfax interviewees whom the government will be calling as witnesses. Once such individual has been called as a witness, his or her version of the pertinent facts becomes publicly known; as a result, there is little reason to protect fact work product. If the witness's testimony corresponds with the factual recitation in his or her prior interview, nothing is lost to LOF if its fact work product becomes known to the defense. If the witness's testimony conflicts with his or her prior statement, the search for truth overrides any tactical advantage LOF might otherwise seek to obtain by resisting disclosure of its fact work product.

Where an interviewee is not called as a witness in this case, there appears to be no reason to reject LOF's claim of work product.[5] In that instance, LOF's claim of work product, even though it may relate only to "fact" work product, should be upheld.

In light of the foregoing, it is hereby

---

5. During the course of my prior examination of the Fairfax materials, I was attentive to the *Brady* doctrine. Aside from a handful of materials that I ordered be disclosed, there was nothing in those materials that appeared to be favorable to the defendants and material as to the issue of guilt or innocence.

**ORDERED THAT** the government shall produce, or cause to be produced, the Fairfax interviews of persons whom it calls as witnesses; such production to occur one week prior to the witnesses' testimony.

So ordered.