Michael SEDILLOS, Bea Shepard, Roxanne Rhodes, Jennifer Werner, Cecelia Walters, and the Denver Classroom Teachers Association, Plaintiffs,

v.

The BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1 IN the CITY AND COUNTY OF DENVER, Jerry Wartgow, Offie Hobbs, and Jane and Jon Does 1–7, in their individual capacities, Defendants.

No. CIV.A.03–N–1526 BNB.

United States District Court, D. Colorado.

April 14, 2004.

Cathy L. Cooper, Colorado Education Association, U.S. Atty., Barry Douglas Roseman, Roseman & Kazmierski, LLC, Denver, CO, for Plaintiffs.

J. Andrew Nathan, Karen R. Wells, Nathan, Bremer, Dumm & Myers, PC, U.S. Atty., Martin Semple, Semple, Miller & Mooney, PC, Denver, CO, for Defendants.

### ORDER

BOLAND, United States Magistrate Judge.

This matter is before me on the **Motion to Permit Limited Waiver of Attorney–Client Privilege** (the "Motion"), filed February 2, 2004. The Motion is DENIED.

Generally, the plaintiffs are teachers and a staff member employed by the Denver Public Schools. They complain that they were retaliated against and illegally transferred away from their work assignments at North Denver High School in violation of their First Amendment rights for speaking out on issues of public concern.

Defendant Jerry Wartgow is the Superintendent of the Denver Public Schools. He asserts as a defense to the plaintiffs' claims that he acted on advice of counsel. According to the Motion:

> [Dr. Wartgow] intends to assert the affirmative defense of "advice of counsel." Defendants have filed a Motion to Amend Answer to assert the additional affirmative defense of "advice of counsel." Dr. Wartgow intends to rely upon a report prepared by and opinion of Patrick Mooney, Esq. Dr. Wartgow has requested that the Board of Education permit a limited waiver of privilege, which would allow him to disclose this report and investigation, and the Board of Education has given approval for a limited waiver of privilege, subject to approval by the Court. The Board of Education wishes to make certain that the waiver of privilege would be limited to the information that the Board of Education has agreed to release subject to the waiver and would not extend beyond a waiver or otherwise be determined to be a more general waiver of the privilege.

Motion at ¶ 1.

Dr. Wartgow seeks an order of this court permitting a limited waiver of the attorney-client privilege. Although not precisely delineated, I understand that the attorney-client waiver would be limited to a report contained in a letter from Mr. Mooney, counsel for the School District, to Dr. Wartgow dated July 14, 2003, "concerning the transfer of teachers at North

"High School," Motion at ¶ 2; and "conversations between Dr. Wartgow and Mr. Mooney relating to the transfer of four of the Plaintiffs from North High School, Mr. Mooney's subsequent investigation and Dr. Wartgow's decision to terminate four of the Plaintiffs, but otherwise preserving the Board of Education's attorney-client privilege." *Id.* at pp. 5–6.

■ The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys. Michael H. Graham, *Handbook of Federal Evidence* § 511.1 n. 2. (5th ed.). The privilege is narrowly construed, however, "because it inhibits the truth finding process." *In re M & L Business Machine Co.,* 161 B.R. 689, 695 (D.Colo.1993). In addition, the attorney-client privilege can be waived by "[a]ny voluntary disclosure by the client" of an otherwise privileged confidential communication. *United States v. Bernard,* 877 F.2d 1463, 1465 (10th Cir.1989); *In re M & L Business Machine,* 161 B.R. at 693.

■ The attorney-client privilege cannot be used as both a sword and a shield. *United States v. Workman,* 138 F.3d 1261, 1264 (8th Cir.1998); *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991); *IMC Chemicals, Inc. v. Niro Inc.,* 2000 WL 1466495 at *22 (D.Kan. July 19, 2000); Graham, *supra,* at § 511.1 n. 2; *see In re M & L Business Machine,* 161 B.R. at 695 (stating that the attorney-client privilege must be applied to "prevent litigants from selectively asserting the privilege as a tactical tool for their own benefit"). For example, in *United States v. Workman,* under facts similar to those present here, the court explained:

> The attorney client privilege may also be implicitly waived, and one way that is done is by raising attorney advice as a defense. During his opening statement and his questioning [of the defendant's one-time attorney] Levad, Workman's trial counsel placed Levad's advice in

issue by asserting that Workman had relied on the advice in cashing the checks. Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with Levad for his own benefit. The attorney client privilege cannot be used as both a shield and a sword, and Workman cannot claim in his defense that he relied on Levad's advice without permitting the prosecution to explore the substance of that advice.

*Workman,* 138 F.3d at 1263–64 (internal citations omitted). *Accord FDIC v. Wise,* 139 F.R.D. 168, 172 (D.Colo.1991)(holding that the FDIC had waived asserted privileges, including the attorney-client privilege, by repeatedly injecting into the case the actions, knowledge, and beliefs of its bank regulators, and stating: "[W]e are persuaded that defendants' ability to test these allegations by reviewing the regulatory documents is vital to their defense. Since the FDIC affirmatively placed this information at issue, allowing it to assert privileges to protect against disclosure of these documents would be manifestly unfair to defendants").

Similarly in this case, Dr. Wartgow cannot on the one hand claim as a defense that he relied on the advice of his counsel, Mr. Mooney, waiving the attorney-client privilege to support that defense, *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.1982)(holding that an implied waiver of the attorney-client relationship occurs when a client asserts reliance on an attorney's advice as a defense), while at the same time invoking the attorney-client privilege to prevent the plaintiffs from exploring fully the substance and circumstances of that advice. *Bernard,* 877 F.2d at 1465 (holding that a party who has waived the attorney-client privilege cannot later claim the protections of that privilege); *In re M & L Business Machine,* 161

B.R. at 695 (stating that the attorney client privilege must be applied "to prevent litigants from selectively asserting the privilege as a tactical tool for their own benefit"); *FDIC*, 139 F.R.D. at 172 (holding that because the FDIC inserted certain documents into the controversy certain otherwise privileged documents, it would be "manifestly unfair" to allow it to assert those privileges to protect against the disclosure of those materials). As the court stated in the *Bilzerian* case, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Bilzerian*, 926 F.2d at 1292.

Dr. Wartgow's reliance on *In re M & L Business Machine* for a contrary result is misplaced. In that case, the Bank of Boulder provided to the United States Attorney in connection with separate criminal investigation of M & L and its principals certain Bank documents that except for the disclosure to the U.S. Attorney were privileged. In connection with that disclosure, the Bank insisted on an agreement that the information provided would be treated as privileged and took other precautions to prevent the further dissemination of the information. 161 B.R. at 691. The information was provided to a grand jury, and criminal indictments followed. Later, in the unrelated bankruptcy of M & L Business Machine, the bankruptcy trustee moved to examine the records presented to the grand jury, including the privileged documents. Judge Kane, although expressing concern with extending the privilege, held that "in the unique circumstances of this case" a limited waiver of the privilege had occurred. Central to Judge Kane's decision were the facts that the case where the limited waiver had occurred was an action separate from the bankruptcy, *id.* at 696, and there was "no evidence that the Bank's cooperation with the U.S. Attorney was for the purpose of obtaining some benefit for itself." Neither of those factors are present here. To the contrary, Dr. Wartgow seeks both to waive the privilege in part and to preserve it in part in the same proceeding, and in a proceeding where he stands to realize a personal benefit from the partial waiver. This is the epitome of using the attorney-client privilege as both a sword and a shield, which is improper. *Bernard*, 877 F.2d at 1465.

Dr. Wartgow's decision to place the advice of counsel in issue in this case is an affirmative act which has resulted in a waiver of the attorney-client privilege with respect to the subject matter of that advice. *Graham, supra*, at § 511.1 n. 2. It would be fundamentally unfair now to limit the plaintiffs' inquiry into all aspects of that advice, which is vital to their case. "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997). Or, as the court in *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408 (D.Del.1992), phrased the rule: "Where a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture."

For the reasons stated, IT IS ORDERED that the Motion is DENIED.