**In re Gail Jean WILKERSON, Debtor.**

**No. 05–44639 HRT.**

United States Bankruptcy Court,
D. Colorado.

Aug. 20, 2007.

Daniel F. Lynch, Denver, CO, Ellen R. Welner, Englewood, CO, for Debtors.

### ORDER ON DEBTOR'S MOTION FOR PROTECTIVE ORDERS

HOWARD R. TALLMAN, Chief Judge.

This case comes before the Court on *Debtor's Motion for Protective Orders* (doc# 44) ("Debtor's Motion"); *Aon Corporation's and Schirmer Engineering's Response to Debtor's Motion for Protective Orders* (doc# 46) ("Aon's Response"); *Debtor's Reply to Aon Corporation's and Schirmer Engineering's Response to Debtor's Motion for Protective Orders* (doc# 48) ("Debtor's Reply"); and *Stipulation of Facts for Hearing on Debtor's Motion for Protective Orders and Amended Motions to Disallow Claim Numbers 10 and 11* (doc# 109) ("Stipulation"). The Court has reviewed the Debtor's Motion, Aon's Response, the Debtor's Reply, the Stipulation, and all supporting documents and briefs. For the reasons stated below,

the Debtor's Motion will be granted in part and denied in part.

## I. BACKGROUND

After review and consideration of the filed pleadings and documents, including the Stipulation filed on June 18, 2007, the Court determined the following material facts are undisputed in this matter. Gail Jean Wilkerson (the "Debtor") filed a voluntary petition under Chapter 7 on October 13, 2005 ("Petition Date"), and received a discharge under 11 U.S.C. § 727 on February 9, 2006. The Debtor was represented by attorney Arthur Lindquist–Kleissler ("Bankruptcy Attorney") for legal services, including consultation regarding preparation and filing of the Debtor's voluntary petition, statement of financial affairs and schedules. The information and communications between the Debtor and her Bankruptcy Attorney pertaining to the Debtor's intended bankruptcy were for the same purpose. Their attorney-client relationship commenced in August, 2005 and continued thereafter, until approximately March 31, 2006.

Within one year prior to the Petition Date, the Debtor was a named party in two independent cases. The first case, styled *Wilkerson, et al. v. Schirmer Eng'g Corp., et al.*, No. 04–CV–258, U.S. District Court, District of Colorado (the "District Court Action"), is still pending. In the second case, No.2004DR008, Gilpin County District Court, Colorado (the "Divorce Proceeding"), a decree of legal separation entered on August 19, 2005. Neither the District Court Action nor the Divorce Proceeding were listed in the Debtor's initial statement of financial affairs and schedules. Additionally, Aon Corporation and its subsidiary, Schirmer Engineering, (collectively "Aon") were not initially listed as creditors.

While preparing for trial in the District Court Action, Aon discovered the Debtor did not disclose the District Court Action in her bankruptcy case. As a result, Aon filed a motion for summary judgment to dismiss the District Court Action on the grounds of judicial estoppel. On October 12, 2006, the Debtor filed her Affidavit of Gail J. Wilkerson ("Affidavit") in the District Court Action explaining the circumstances. In the notarized Affidavit, the Debtor stated that she disclosed the existence of the District Court Action to her bankruptcy attorney, and the District Court Action was inadvertently left off the disclosures of assets required by 11 U.S.C. § 521.

Subsequently on October 23, 2006, the Debtor filed a Verified Motion to Reopen her bankruptcy case to amend the Statement of Financial Affairs and Schedules. The Debtor stated the reason for the amendments was her failure to disclose the District Court Action in her original filing. This Court granted the motion on October 24, 2006. On the following day, the Debtor filed her Amended Statement of Financial Affairs and Amended Schedules B, C and F, disclosing the pending District Court Action, claiming exemptions with respect to that action and adding Aon as an unsecured creditor. The interest in the District Court Action is an intangible asset with value for the Debtor's bankruptcy estate.

On December 20, 2006, this Court entered an order permitting Aon to conduct discovery regarding the Debtor's failure to disclose the District Court Action in her initial bankruptcy documents. Pursuant to FED. R. BANKR.P. 7030, 7034, and 9014, on December 28, 2006, Aon served its Notice of Deposition and Request for Production of Documents on the Debtor. On January 8, 2007, pursuant to FED. R. BANKR.P. 7026(c)(1), the Debtor filed the Debtor's

Motion seeking a protective order from this Court on certain discovery requests by Aon.

Turning to the issues in the Stipulation, the parties seek the Court's determination on (1) the extent to which the Debtor may assert the attorney-client, work product or other privilege that would protect or exclude documents relating to her dealings with her Bankruptcy Attorney from inquiry, discovery or presentation as evidence, (2) the extent to which the documents and/or communications identified by the Debtor in her privilege log fall within the scope of the privileges asserted therein, and (3) the extent to which the Debtor has waived any such privilege. The Court will discuss each issue in turn.

For clarity, the parties only seek determination on documents relating to the Debtor's dealings with her Bankruptcy Attorney. Many documents that the Debtor claims are privileged in her Amended Privilege Log pertain to the Debtor and her various other attorneys involved in either the District Court Action, the Divorce Proceeding and this bankruptcy case. Accordingly, this Court has limited the its discussion solely to the communications claimed as privileged between the Debtor and her Bankruptcy Attorney, including any employees of the Bankruptcy Attorney's law office. Based on the Stipulation, the Court will not address privilege issues pertaining to the remaining documents listed in the Debtor's Amended Privilege Log.

## II. DISCUSSION

### A. Standard

▮ FED.R.CIV.P. 26(c), as applied to bankruptcy cases by FED. R. BANKR.P. 7026(c), dictates the standard which this Court must apply in ruling on a motion for protective orders. Rule 26(c) provides, in relevant part:

> Upon motion by a party or the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

FED.R.CIV.P. 26(c). "The decision to grant a protective order is vested in the district court's discretion" because this is a discovery dispute. *Riensch v. Union Pac. R.R.*, 12 F.Supp.2d 1136, 1138 (D.Colo.1998) (citing *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir.1987)).

In addition, the Debtor's pending litigation in the U.S. District Court, District of Colorado is property of the Debtor's bankruptcy estate. The Federal Rules of Evidence apply to bankruptcy cases. FED. R. BANKR.P. 9017. Under the Federal Rules of Evidence, except as otherwise required, the existence of privileges "is governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." FED.R.EVID. 501. Accordingly, this Court will determine the existence and waiver of any privilege in this case under the federal common law.

### B. Attorney–Client Privilege

▮ The well established purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449

U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). This rationale promotes full disclosure, while fostering a confidential relationship between the attorney and the client. "The privilege is narrowly construed, however, because it inhibits the truth finding process." *Sedillos v. Bd. of Educ. of Sch. Dist. No. 1*, 313 F.Supp.2d 1091, 1093 (D.Colo.2004) (internal quotations omitted); *see also Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999) (A "party claiming the attorney-client privilege must prove its applicability, which is narrowly construed.").

■■■■ The Debtor may only benefit from the protection of the attorney-client privilege if the following elements are satisfied:

> (i) the asserted holder of the privilege is or sought to become a client, (ii) the person to whom the communication was made is an attorney, or his subordinate, (iii) the communication is made in connection with the person's role as a lawyer, (iv) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing legal advice, services or assistance, and not for the purpose of committing a crime or tort, and (v) no waiver has occurred.

*In re Grand Jury* 90–1, 758 F.Supp. 1411, 1413 (D.Colo.1991); *see also In re Investment Bankers, Inc.*, 30 B.R. 883, 888 (Bankr.D.Colo.1983). "Under the common law, a critical component of the privilege 'is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.' " *In re Qwest Communications Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir.2006) (quoting *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir.1985)).

■■■■ Any party claiming the privilege "must bear the burden as to specific questions or documents, not by making a blanket claim." *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir.1999) (citing *FDIC ex rel. Heritage Bank & Trust v. United Pac. Ins. Co.*, 152 F.3d 1266 (10th Cir.1998)). The Debtor has not made such a blanket claim. Rather, the Debtor has provided Aon and this Court with an Amended Privilege Log, a copy of which was attached to her memorandum, filed on June 18, 2007. The Amended Privilege Log lists the documents and information specifically withheld from Aon under the Debtor's asserted privilege.

In the present case, the Debtor is the asserted holder of the privilege. The Debtor is an individual who communicated with her Bankruptcy Attorney for the express purpose of legal services, including the consultation regarding, preparation and filing of the Debtor's voluntary petition, statement of financial affairs and schedules. Thus, the first three of the above elements are met for purposes of claiming attorney-client privilege with respect to the documents appearing on the Debtor's Amended Privilege Log.

■■■■ However, many of the documents on the privilege log are not based on facts communicated by the Debtor to her Bankruptcy Attorney (item (iv) above). Nor are they confidential communications. It appears that Debtor's Bankruptcy Attorney uses a number of form documents in his practice to communicate important information, common to a broad range of the cases he handles, to his clients. Some of them are addressed to "potential client" and others are addressed to the Debtor. Others appear to be in the nature of informational hand-outs. What they have in common is that they were prepared inde-

pendently of the Bankruptcy Attorney's relationship with the Debtor and are not responsive to specific factual information supplied by the Debtor. Moreover, where the identical document, with the possible exception of the address and case reference, is supplied to clients other than the Debtor, it is hardly a confidential communication. Such form letters are not privileged.

The Court does not suggest that form letters may never enjoy the protection of attorney-client privilege. There undoubtedly are circumstances under which an attorney maintains a number of form letters and the choice of a particular form letter is driven by specific information communicated by the client in the context of the attorney-client relationship. But that is not this case.

It is apparent that a number of the forms that Debtor's Bankruptcy Attorney supplied to her are general informational handouts that contain a broad range of information. Some of the contents may be applicable to all bankruptcy cases and some may not. But the document descriptions make it clear that the entire handout is supplied to the client or potential client whether all of the information applies to that individual or not. Most telling is the disclaimer that the information contained in the handout is "not a substitute for legal advice."

■ The form letters that are addressed to the Debtor and contain a case reference clearly are prepared within the context of the attorney-client relationship. But these are letters of a type that are supplied to all clients in a general type case, such as "consumer chapter 7 clients." They are sent out at particular stages of a relatively standard type of case. It is not unusual for this type of letter to go out giving instructions for review of draft schedules; to inform the client that the case has been filed and giving instructions relative to the meeting of creditors; or after the meeting of creditors informing the client of remaining deadlines and the type of issues that may arise in the normal case from that point until discharge and case closing. Where such letters are sent out *without alteration* based only upon whether the client is an "individual consumer chapter 13" client or an "individual consumer chapter 7" client, etc., such communications reveal nothing more than the type of case the client is involved in, which is intended to be public knowledge in any case. However, such letters, or portions of such letters, may well enjoy protection of attorney-client privilege where alterations are made responsive to the specifics of the Debtor's individual case.

■ The Bankruptcy Attorney's bankruptcy questionnaire is, in many ways, similar to those informational form letters and hand-outs. The Bankruptcy Attorney uses a questionnaire incorporating the standard form bankruptcy schedules, but includes within the questionnaire his own comments and advice intended to give guidance to his clients as to how the questionnaire is to be completed. As with the form letters, this is a document prepared independently of his attorney-client relationship with the Debtor and not responsive to information provided by her. Nor was it provided to the Debtor under circumstances implicating any degree of confidentiality. It is not privileged.

Neither is the completed questionnaire a privileged document to the extent that the information contained on it is responsive to the Bankruptcy Attorney's questionnaire items intended to elicit information that would appear on the Debtor's bankruptcy schedules. The test is not whether the information ultimately is reflected on the Debtor's completed schedules, the test is whether the information

was provided under circumstances giving rise to a reasonable expectation of confidentiality. Information provided to the Bankruptcy Attorney for the purpose of completing the bankruptcy schedules is not privileged because it does not meet that test. *See, e.g., U.S. v. White,* 950 F.2d 426, 430 (7th Cir.1991) ("When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court.").

■■■■■ The Debtor has claimed privilege with respect to billing statements that reflect a "description of legal issues discussed." But, "[f]ees paid for legal work and the general nature of legal work performed do not constitute a confidential communication and are, therefore, outside the attorney-client privilege." *In re Investment Bankers, Inc.,* 30 B.R. 883, 885 (Bankr.D.Colo.1983) (citing *U.S. v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974)). Thus, to the extent that the billing statements contain nothing more than general descriptions of issues discussed that are common to a typical bankruptcy case, without revealing the substance of those discussions, they are not protected by privilege.

■■■■ The Debtor has claimed privilege with respect to handwritten comments and questions that appear on draft schedules provided to the Debtor. Those comments appear to be responsive to information provided by the Debtor and communicated to the Debtor in confidence. Thus, to the extent that the privilege has not been waived, those handwritten comments and questions are privileged. But, as the Court will discuss, the Debtor has waived any privilege with respect to any of those comments and questions that either relate to the District Court Action or relate generally to disclosure of legal actions.

### C. Work Product Privilege

■■■■ The Supreme Court established the work product doctrine to protect "writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). The work product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). "A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential." *Quinn v. Ingham (In re Gibco, Inc.),* 185 F.R.D. 296, 298 (D.Colo.1997); *see also RTC v. Heiserman,* 151 F.R.D. 367, 373 (D.Colo. 1993). For comparison, "[a] document is protected by the attorney client privilege if it reveals a *communication* between a client and an attorney, made in order to obtain or deliver legal assistance, that was intended to be treated as confidential." *Id.* (emphasis added); *see also In re Grand Jury Subpoena,* 697 F.2d 277, 278 (10th Cir.1983).

■■■■ For the most part, the documents that appear on the Amended Privilege Log concern communications between Debtor and her Bankruptcy Attorney. Those communications are more properly analyzed under attorney-client privilege. But, there is one document that is entitled "Client File Notes & Missing Information," dated September 22, 2005, to which attorney work-product privilege may apply. The information concerning this document that appears on the Amended Privilege Log is too sketchy to

make any definitive determination. However, it is privileged to the extent that it contains the Bankruptcy Attorney's notes revealing his mental impressions, legal strategies or legal theories with respect to the Debtor's bankruptcy case.

### D. The Debtor May Assert the Attorney–Client Privilege

"The [attorney-client] privilege may only be raised by the client, who may be a corporation as well as an individual." *In re Diasonics Sec. Litig.*, 110 F.R.D. 570, 572 (D.Colo.1986) (citing *Upjohn*, 449 U.S. at 389–90, 101 S.Ct. at 682–83). But many courts have been careful to distinguish clients in the context of bankruptcy cases. "Outside of bankruptcy, the attorney-client privilege belongs to the client alone.... The filing of bankruptcy by an individual debtor requires a determination as to whether anyone else controls the privilege." *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1023–24 (Bankr. D.Ga.1998); *see also Ramette v. Bame (In re Bame)*, 251 B.R. 367, 372 (Bankr. D.Minn.2000); *French v. Miller (In re Miller)*, 247 B.R. 704, 708 (Bankr.N.D.Ohio 2000). It is undisputed that the Debtor is an individual and was a client of her Bankruptcy Attorney. Therefore, the remaining question regarding assertion of the privilege is whether or not the Debtor actually controls the attorney-client privilege.

The Supreme Court has held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 1996, 85 L.Ed.2d 372 (1985). A bankruptcy trustee also has statutory authority to require turnover of records held by former attorneys "subject to any applicable privilege."

11 U.S.C. § 542(e). However, in *Weintraub*, the Supreme Court "specified that its holding 'has no bearing on the problem of individual bankruptcy.' " *Foster*, 188 F.3d at 1265 (citing *Weintraub*, 471 U.S. at 356, 105 S.Ct. at 1995).

The case of *In re Bazemore* was the first case to interpret *Weintraub* in the context of an individual debtor. That court used a balancing test weighing "the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate." *Bazemore*, 216 B.R. at 1024.

In *Foster*, the Tenth Circuit applied this balancing test to determine whether the individual debtor or the trustee controlled the privilege because the parties stipulated to using the *Bazemore* test. However, in a footnote, the court stated that "we do not adopt any rule that courts must balance the factors listed in *Bazemore*. We simply decline to address *sua sponte* the antecedent legal question whether a court should ever allow a bankruptcy trustee to control an individual debtor's attorney-client privilege." *Foster*, 188 F.3d at 1266 n. 7.

In this case, the Trustee is not asserting his entitlement to control the privilege. Nonetheless, it is necessary to resolve the question because the Debtor's assertion of the privilege is unavailing unless she is the one who actually controls it. Moreover, only the person who controls the privilege is capable of waiving it. Therefore, the question of who controls the privilege is relevant here. The scope of the issue presently before the Court does not require it to address control of any privileges with respect to the District Court Action. Its consideration is limited to control of privileges arising between Debtor and her Bankruptcy Attorney.

The Court believes *Bazemore* does provide a reasonable framework in which to analyze whether or not the Trustee controls the privilege in an individual case. Individual cases are very different from corporate cases. There is great potential for a debtor to occupy an adversarial posture with respect to a bankruptcy trustee. An individual could never be assured of effective representation if attorney-client privilege could be waived by an adverse party. On the other hand, where a cause of action or a counterclaim becomes a valuable asset of the estate, there may well be circumstances where a trustee's control of an associated attorney-client privilege is necessary in order to maximize the value of the asset to the estate. *Bazemore's* balancing recognizes the tension between those interests.

In this case, the Debtor is indeed in an adversarial posture to the Trustee. He has objected to her claim of exemption of the District Court Action. Thus, substantial harm would accrue to the Debtor if the Trustee were deemed to be the party in control of the attorney-client privilege. The Trustee would have an unfair advantage with respect to that contested matter. Depriving the Trustee of control of the privilege does not prejudice the Trustee or the estate. He still has the normal discovery devices available to him to obtain information germane that dispute. Thus, in this case, a balancing of the interests favors the Debtor's control of the attorney-client privilege and work-product privilege.

### E. *Waiver of Attorney–Client Privilege*

■■■ Given the Court's determination that the majority of documents appearing on the Debtor's Amended Privilege Log are not subject to a claim of privilege in the first instance, the issue of waiver has only limited application. Nonetheless, the issue of waiver does arise because the Debtor has placed her communications with her Bankruptcy Attorney at issue. Aon maintains that the Debtor waived the attorney-client privilege with respect to her communications with her Bankruptcy Attorney. "A party asserting waiver of a privilege has the burden of establishing the waiver." *Gibco*, 185 F.R.D. at 298. The Court holds that the Debtor has waived the attorney-client privilege regarding communications relating to her alleged disclosure to her Bankruptcy Attorney about the District Court Action.

■■■ The attorney-client privilege centers around the principle of confidentiality and "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *In re Sealed Case*, 278 U.S.App. D.C. 188, 877 F.2d 976, 980 (D.C.Cir.1989); *see also In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179 (10th Cir.2006); *United States v. Ryans*, 903 F.2d 731, 741 (10th Cir.1990). "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989).

### 1. *Implied Waiver of Attorney–Client Privilege*

■■■ "A privilege holder may waive the attorney-client privilege ... by implication under the common law doctrine of implied waiver." *In re Qwest Commc'ns Int'l, Inc.*, No. 01–CV–01451–REB–CBS, 2005 U.S. Dist. LEXIS 19129, at *13 (D.Colo. Aug. 15, 2005). The United States District Court for the District of Colorado has adopted a three-pronged test when ruling on the implied waiver of privileges:

> If (i) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, (ii) through the affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case, and (iii) application of the privilege would deny the opposing party access to information vital to its defense, the court should find that the asserting party has impliedly waived the privilege through its own affirmative conduct.

*Federal Deposit Ins. Corp. v. Wise,* 139 F.R.D. 168, 172 (D.Colo.1991); *see also Hearn v. Rhay,* 68 F.R.D. 574, 581 (D.Wash.1975).

██ Applying the test to the particular facts of this case, the Court finds the Debtor has impliedly waived the asserted attorney-client privilege in the this case. First, assertion of the privilege in this Court stems from the Debtor's affirmative act of amending her claim of exemptions to include the exemptions applicable to the District Court Action.

Second, the circumstances of that amendment to the Debtor's exemption schedule placed her good faith directly at issue. *In re Osborn,* 24 F.3d 1199, 1206 (10th Cir.1994) (quoting *In re Calder,* 973 F.2d 862, 867–68 (10th Cir.1992)) ("[T]here are exceptions to the right to amend. 'An amendment may be denied . . . if there is bad faith by the debtor or prejudice to the creditor.' "). The Debtor sought to reopen her case to file the amendment approximately eight months after she received her discharge and her bankruptcy case was closed. Events in the District Court Action brought to light the fact that Debtor failed to disclose the District Court Action in this bankruptcy proceeding despite unambiguous questions such as item number 4 on the Statement of Financial Affairs asking the Debtor to "[l]ist all suits and

administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." The Debtor's position is that the omission of that information was inadvertent and that she did fully inform her Bankruptcy Attorney of the existence of the District Court Action. By so stating, she has directly placed her confidential communications with her Bankruptcy Attorney at issue with respect to this Court's determination concerning the exemptions she now claims.

Finally, without the ability to explore the veracity of the Debtor's statement of full disclosure to her counsel, Aon would be prejudiced in its ability to support its objection to the Debtor's claims of exemption.

The above discussion comes as no great surprise to the Debtor. She states that she understands, because she has asserted that she informed her Bankruptcy Attorney of the District Court Action, Aon has the right to inquire of her counsel as to the truth of that statement. But the waiver that the Court finds in these circumstances is not so limited. The question of the Debtor's good faith is not settled by knowing the answer to the question of whether or not she disclosed the District Court Action to her Bankruptcy Attorney. Attorney-client interactions are not one-way matters. By placing her disclosures to counsel at issue, Debtor has not only implicated her side of the conversation, she also implicates counsel's advice with respect to what she must disclose.

██ "The attorney-client privilege cannot be used as both a sword and a shield." *Sedillos,* 313 F.Supp.2d at 1093; *see also United States v. Bernard,* 877 F.2d 1463, 1465 (10th Cir.1989) (holding a party who waives the attorney-client privilege cannot later claim the protections of that waived privilege); *Jobin v. Bank of*

*Boulder (In re M & L Business Machine, Co.),* 161 B.R. 689, 695 (D.Colo.1993) (stating the attorney-client privilege cannot be asserted selectively as a "tactical tool" by litigants); *Federal Deposit Ins. Corp. v. Wise,* 139 F.R.D. 168, 172 (D.Colo.1991) (stating that after affirmatively placing information at issue, it would be "manifestly unfair" to "assert privileges to protect against disclosure"). As a matter of fairness, the Debtor may not contemporaneously benefit from the protection of confidentiality inherent in claiming the privilege, while also using the privilege to withhold production of information harmful to her case. The Debtor voluntarily placed confidential information at issue in this case. Thus, the Debtor has waived the attorney-client privilege on those communications involving the same subject-matter.

### 2. Subject–Matter Waiver of Attorney–Client Privilege

 Finding that the Debtor has waived her attorney-client privilege does not end the inquiry. The Debtor's waiver does not vitiate the privilege with respect to all of her communications with her Bankruptcy Attorney. The Court must determine the scope of the waiver. As the United States District Court for the District of Colorado explained:

> The subject-matter waiver rule apposite to the attorney-client privilege provides that a client's voluntary disclosure of documents otherwise protected by the attorney-client privilege breaches the confidentiality of the attorney-client relationship and effects a waiver of the privilege not only as to the disclosed documents, but also as to all documents relating to the subject matter of the disclosed documents.

1. Courts are not uniform in the factors that they examine in this context. For example,

*In re Qwest Commc'ns Int'l, Inc.,* 2005 U.S. Dist. LEXIS 19129, at * 14 (citing *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir. 1982)). But, "[s]ubject matter waiver is narrowly construed. Disclosure of privileged materials concerning one subject matter does not waive privileges attaching to materials concerning other subject matters." *In re Commercial Financial Services, Inc.,* 247 B.R. 828, 847 (Bankr. N.D.Okla.2000) (citing *United States v. Nobles,* 422 U.S. 225, 240, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975)). "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." *Id.* (quoting *United States v. Collis,* 128 F.3d 313, 320 (6th Cir.1997)).

 Among the factors that other courts have evaluated in order to define the scope of a waiver of privilege are

1) the general nature of the lawyer's assignment; 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur.

*Rambus, Inc. v. Infineon Technologies AG,* 220 F.R.D. 264, 289 (E.D.Va.2004); *U.S. v. Skeddle,* 989 F.Supp. 912, 915–16 (N.D.Ohio 1997).[1]

the Federal Circuit weighs three factors to determine what constitutes the subject-matter

■ The task of a bankruptcy attorney retained to prepare and file a bankruptcy case is relatively wide ranging. At minimum, it involves gathering a variety of information relating to the client's financial affairs; analysis of that information to determine the advisability of filing a bankruptcy case; completion and filing of standard form bankruptcy schedules; and representation at the meeting of creditors. The activities involved in gathering and analyzing information relating to the client's financial condition and preparing the schedules are not amenable to being separated into a number of discrete tasks. Specifically, as regards the Debtor's alleged disclosure of the District Court Action to her Bankruptcy Attorney, that could have naturally occurred any time either in the context of oral discussions or written responses to items on the questionnaire. Virtually all of the Debtor's oral and written communications with her Bankruptcy Attorney prior to filing the case related to the single task of preparing a complete and accurate set of bankruptcy schedules, but that does not mean that all of the Debtor's pre-petition discussions with her attorney are open to scrutiny.

The Court has found the Debtor impliedly waived privilege in order to support her amended claim of exemption. Further disclosure is sought by Aon in order to meet the Debtor's claims that she fully informed her Bankruptcy Attorney of the pendency of the District Court Action. Finally, the Court must balance the harm to the Debtor's claim of privilege, resulting from further disclosure, with the prejudice to Aon of limiting further disclosure.

The Debtor would seemingly limit Aon to obtaining a true or false answer to the question of whether or not she informed her Bankruptcy Attorney of the District Court Action. But such a limitation would deprive Aon and the Court of the context of the Debtor's actions and it is that context that will illuminate the extent to which the Debtor has acted in good faith in this matter. Thus, the subject matter scope of the Debtor's waiver is not amenable to the narrow limitation the Debtor seeks because the subject matter of her disclosure includes not only information regarding what she did, or did not, disclose. It includes all of the information she received from her Bankruptcy Attorney focused on her duty of full disclosure.

The Court has found that the majority of the documents claimed to be privileged by the Debtor are not entitled to privilege because they are form documents that are clearly intended by Debtor's Bankruptcy Attorney to be provided to clients other than the Debtor. As such, they are not communications made with any reasonable expectation of confidentiality, nor were they prepared in response to facts communicated by the Debtor. They bore no unique relationship to this Debtor, but were prepared to provide general guidance to other clients as well as the Debtor. The Debtor's implied waiver of the privilege is an additional ground upon which the Court denies the Debtor's assertion of privilege to communications in those form documents falling within the scope of the implied waiver as well as any additional documents where Debtor's privilege claim survived the prior analysis but which contain communications falling within the scope of the waiver.

The subject matter of the Debtor's implied waiver is disclosure of legal actions such as the District Court Action. Thus, the Debtor's implied waiver applies to all

of a waiver: (1) the circumstances of the disclosure; (2) the nature of the legal advice sought; and (3) the prejudice to the parties of permitting or prohibiting further disclosures. *Blue Lake Forest Prods., Inc. v. United States,* 75 Fed.Cl. 779, 793 (2007).

communications from the Debtor concerning disclosure of legal actions as well as communications from Debtor's Bankruptcy Attorney concerning her duty to disclose such actions and asking for information concerning such actions. This includes the more general communications from her Bankruptcy Attorney regarding her duty of full disclosure.

## III. CONCLUSION

In accordance with the foregoing discussion, the Court has prepared an Appendix to this Order that lists the documents withheld by the Debtor under a claim of privilege. Adjacent to each document, the Court has noted its privilege determination based upon the document descriptions appearing in the Debtor's privilege log. Not all of those determinations can be definitive because the Court has not conducted an *in camera* review. Nonetheless, the above discussion should provide sufficient guidance to the parties to settle any lingering uncertainty. It is therefore

**ORDERED** that the *Debtor's Motion for Protective Orders* is GRANTED IN PART and DENIED IN PART. Protection is GRANTED under FED. R. BANKR. P. 7026(c) with respect to documents subject to attorney-client privilege or attorney work-product privilege in accordance with the Appendix to this Order. The Motion is DENIED as to the balance of the documents identified as not being subject to privilege. It is further

**ORDERED** that the Court directs the parties to reschedule the Debtor's deposition for an examination consistent with this ruling.

## APPENDIX TO ORDER ON DEBTOR'S MOTION FOR PROTECTIVE ORDERS

| DOCUMENT | PRIVILEGE DETERMINATION |
|---|---|
| 1. Statement of Account, dated 9/27/05, from Arthur Lindquist–Kleissler, includes a description of services, time spent and related charges; time entry of 9/1/05 includes description of legal issue discussed, for which privilege is claimed—(5 pages) | privileged only to the extent that the "description of legal issue discussed" reveals the substance of attorney-client communications not subject to the implied waiver |
| 2. Undated Letter from Arthur Lindquist–Kleissler addressed "Dear Potential Client" describing list of 12 documents that the letter claims to be enclosed; the letter also includes some general legal advice about completing the bankruptcy questionnaire (for which advice the privilege is claimed). (2 pages) | not privileged |
| 3. Undated document titled "The Steps" consisting of 24 paragraphs descriptive of Mr. Lindquist–Kleissler's process of preparing and filing a bankruptcy petition; this document does include legal advice for which privilege is claimed (3 pages) | not privileged |
| 4. Undated document titled "Quick Check List Before Filing not privileged Bankruptcy" and including the following disclaimer: "This letter contains only general principles of law and is not a substitute for legal advice;" this document consists of a general discussion of a wide spectrum of legal issues and legal advice for filing bank- | not privileged |

## APPENDIX TO ORDER ON DEBTOR'S MOTION
## FOR PROTECTIVE ORDERS—Continued

ruptcy. The privilege is claimed for the whole document. (4 pages)

| | | |
|---|---|---|
| 5. | Undated document titled "The Most Common Questions not privileged Asked About Bankruptcy," as the title suggests is a listing of 18 frequently asked questions and answers thereto; the privilege is claimed for the first 17 questions; the last question is "What are the attorney fees" to which Mr. Lindquist–Kleissler gives a general answer to how fees are assessed in bankruptcy cases. (4 pages) | not privileged |
| 6. | Undated document titled "Instruction and Advisement not privileged Letter for Completion of Bankruptcy Questionnaire" and includes the disclaimer "This letter contains only general principles of law and is not a substitute for legal advice;" this letter is a general discussion of a wide spectrum of legal issues pertaining to the filing of bankruptcy; the privilege is claimed for the whole document. (9 pages) | not privileged |
| 7. | Undated document titled "What you don't know can hurt not privileged you;" consisting of list of 22 statements of legal advice and information pertaining to the filing of bankruptcy and statements pertaining to the importance of hiring Mr. Lindquist–Kleissler as bankruptcy counsel, rather than someone else; the privilege is claimed for the statements of legal advice and information. (2 pages) | not privileged |
| 8. | Arthur Lindquist–Kleissler's Bankruptcy Questionnaire, as completed and signed 9/4/05 by Debtor; the 45–page questionnaire is sub-divided into the following parts: | |
| a. | A preamble of legal advice and instruction about not privileged completing the questionnaire, for which the privilege is claimed (½ page) | not privileged |
| b. | Preliminary Questions which elicit some data and some responses to test the client's understanding of the bankruptcy process, some of which may be intended to be disclosed in the petition, statement of financial affairs and schedules (1 page); | privileged only to the extent that it contains responses to questions revealing information that is not intended to be included in the bankruptcy schedules |
| c. | Your Personal Data which elicits data that may be intended to be disclosed in the petition, statement of financial affairs and schedules (½ page); | privileged only to the extent that it contains responses to questions revealing information that is not intended to be included in the bankruptcy schedules |
| d. | Your Spouses Personal Data which elicits data that may be intended to be disclosed in the petition, statement of financial affairs and schedules (½ page); | privileged only to the extent that it contains responses to questions revealing information that is not intended to be includ- |

### APPENDIX TO ORDER ON DEBTOR'S MOTION
### FOR PROTECTIVE ORDERS—Continued

| | | |
|---|---|---|
| | | ed in the bankruptcy schedules |
| e. | Combined Personal Data which elicits data that may be intended to be disclosed in the petition, statement of financial affairs and schedules (1/4 page); | privileged only to the extent that it contains responses to questions revealing information that is not intended to be included in the bankruptcy schedules |
| f. | Statement of Financial Affairs—this part of the questionnaire uses the verbatim language of the Court's official form of Statement of Financial Affairs, but annotated with legal advice for answering certain questions; the form provides labeled spaces for the client's answers (13½ pages—Ms. Wilkerson's copy is missing the first page of this part) | not privileged |
| g. | Schedules A through J—this part of the questionnaire uses the verbatim language of the Court's official form, but annotated with legal advice for answering certain questions; the form provides labeled spaces for the client's answers (24 pages) | not privileged |
| h. | Signature page—this½ page solicits the client's confirmation that the questionnaire has been completed with all requested information, the client's understanding of certain bankruptcy concepts, and the client's understanding of certain fee arrangements. This page is signed and dated by Ms. Wilkerson. | not privileged |
| 9. | 10/18/05 letter from Arthur Lindquist–Kleissler addressed to Debtor, at 153 Golden Leaf Way, Golden, CO 80403, referencing Case No. 05–44639 HRT and titled "Filing Information;" provides legal advice about the filing of the referenced case and what to expect in post-filing proceedings, such as the 341 meeting; the privilege is claimed for the whole document. (11 pages) | privileged only to the extent that the body of Bankruptcy Attorney's form letter has been altered to be responsive to particular issues arising in Debtor's bankruptcy case |
| 10. | 10/19/05 letter from Arthur Lindquist–Kleissler addressed to Debtor, at 153 Golden Leaf Way, Golden, CO 80403, referencing Case No. 05–44639 HRT and titled "Master Post–Petition Advisement Letter 050813;" which provides legal advice about the filing of the referenced case and what to expect in post-filing proceedings, such as the 341 meeting; the privilege is claimed for the whole document. (37 pages) | privileged only to the extent that the body of Bankruptcy Attorney's form letter has been altered to be responsive to particular issues arising in Debtor's bankruptcy case |
| 11. | 10/25/05 letter from Arthur Lindquist–Kleissler addressed to Debtor, at PO Box 1072, Golden, CO 80401, titled "Review and Amendment Advisement Letter," containing legal advice and recommendations regarding bankruptcy matters; the privilege is claimed for the whole document. (6 pages) | privileged only to the extent that the body of Bankruptcy Attorney's form letter has been altered to be responsive to particular issues arising in Debtor's bankruptcy case |

## APPENDIX TO ORDER ON DEBTOR'S MOTION
## FOR PROTECTIVE ORDERS—Continued

| | |
|---|---|
| 12. Arthur Lindquist–Kleissler's blank "Bankruptcy Questionnaire" (45 pages of questions regarding the Debtor's financial circumstances, including legal advice and recommendations regarding the completion of same) | not privileged |
| 13. Document titled "Client File Notes & Missing Information," dated 9/22/05, containing handwritten notes consistent with title of document. The privilege is claimed for the whole document. (1 page) | attorney work-product to the extent that it contains Bankruptcy Attorney's mental impressions, conclusions, opinions or legal theories |
| 14. 9/23/05 letter addressed to Michael Wilkerson, at 153 Golden Leaf Way, Golden, CO 80403, and to Gail Wilkerson, at 7941 Julian Street, Westminster, CO 80030, titled "Advisement Letter Regarding Review of Typed Bankruptcy Documents (5 pages); this letter references enclosed copies of the following documents marked "1st Draft ALJ," annotated with handwritten comments and questions (29 pages): | letter is privileged only to the extent that the body of Bankruptcy Attorney's form letter has been altered to be responsive to particular issues arising in Debtor's bankruptcy case |
| a. Statement of Social Security Numbers, Petition, Statement of Financial Affairs, Schedules A—J, Declaration Concerning Debtor's Schedules, Verification of Creditor Matrix, Creditor Matrix, Notice to Individual Consumer Debtor, Disclosure of Compensation of Attorney for Debtor, and Chapter 7 Individual Debtor's Statement of Intention | 1) Bankruptcy Attorney's handwritten comments and questions are privileged 2) otherwise, draft schedules are not privileged |
| 15. 10/12/05 document titled "Verification Regarding Accuracy of Statements and Schedules and Acknowledgment of Advice From Counsel," signed by Ms. Wilkerson, the contents of which are consistent with the title of the document (6 pages) | privileged |